*In re* APPLICATION OF KANE COUNTY COLLECTOR.—(VIRGINIA J. THARP, Petitioner-Appellant, *v.* ROBERT CRITTON, County Treasurer of Kane County, Trustee, Respondent-Appellee.)

Second District    No. 80-850

Opinion filed December 4, 1981.

44

Steven A. Salzman, of Schmidt and Ginsberg, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Ronald P. Stake, Robert J. Morrow, and David R. Akemann, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The petitioner lost her home, located at 825 Royal Lane, Dundee, Illinois, through failure to pay real estate taxes assessed against the property for the year 1975, payable in 1976. A tax deed was issued to Michael Lapat on December 21, 1979, after the period of redemption had expired. Thereafter, the petitioner brought a petition for indemnity under the provisions of section 247a(4) of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 728a(4)) and was awarded $1 as indemnity.

On appeal, the petitioner asserts that the trial court erred in not awarding indemnity in the amount of the fair cash value of the subject property. More specifically, she maintains that the trial court's award of $1 compensation is against the manifest weight of the evidence; that such award is contrary to the express language of section 247a(4) of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 728a(4)); and that the $1 award frustrates the purpose of the statute and the legislative intent (Ill. Rev. Stat. 1979, ch. 120, par. 728a(5)).

The defendant county treasurer, as trustee of the fund created by the statute, contends that the decision of the trial court was not an abuse of discretion; that the trial court had the discretion to enter judgment in favor of the petitioner for less than the fair market value of the property, after deducting mortgages and liens, if equity warrants such an award, and that the trial court could take into consideration the condition and income of the fund in making its determination.

Section 247a of the Revenue Act of 1939 is designed to ameliorate in some instances the harsh consequences of a tax foreclosure. It provides that each person purchasing a tract or lot under tax foreclosure shall pay a fee of $10 to the county collector "for the purpose of an indemnity fund." (Ill. Rev. Stat. 1979, ch. 120, par. 728a(2).) Section 247a(4) of the Revenue Act of 1939 reads as follows:

"Any owner of real estate sold pursuant to any provision of this Act at a sale held subsequent to September 1, 1970, who without fault or negligence of his own sustains loss or damage by reason of the issuance of a tax deed pursuant to Sections 266 or 266a, and who is barred or in any way precluded from bringing an action for the recovery of such real estate *or any owner or property containing four or less dwelling units who resided thereon the last day of the period of redemption who, in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation,* has the right to indemnity for the loss or damage sustained. Indemnity shall be limited to the fair cash value of the real estate as of the date that the tax deed was issued, less any mortgages or liens thereon." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 728a(4).) (The underscored words represent the language added by Public Act 81-512, and the statute, as amended, became effective on January 1, 1980.)

In addition, section 247a(5) of the same Act provides:

"The court shall liberally construe this Section [section 247a] to provide compensation wherever in the discretion of the Court the equities warrant such action." Ill. Rev. Stat. 1979, ch. 120, par. 728a(5). (This language was likewise inserted by Public Act 81-512 and also became effective on January 1, 1980.)

■■ ■ Before addressing the merits of the petitioner's contention on appeal, we point out that the respondent had argued in the trial court that the statute, as amended, did not govern the present case. In this regard, the defendant asserted that the amended statute did not apply to cases where, as here, the tax sale was held and the tax deed issued prior to the effective date of the amendatory provisions. Apparently the respondent was of the view that the September 1, 1970, date of section 247a(4) applied only to the "without fault or negligence" language of the statute and not the words inserted by Public Act 81-512. The respondent indicated, however, that the trial court could apply either the "equitably entitled to just compensation" standard or the "without fault or negligence" test. The trial court first assumed at trial and then concluded in its judgment that the present case fell within the purview of the amended statute and accordingly determined that negligence on the part of the petitioner would not bar her from recovery. In this court the respondent

again attempts to raise the question whether the trial court correctly determined that the amendatory provisions of Public Act 81-512 apply to the present case. Upon the petitioner's motion to strike, this court struck this argument from respondent's brief since respondent had not cross-appealed on this issue. *Village of Arlington Heights v. National Bank* (1977), 53 Ill. App. 3d 917, holds that a specific negative finding below against an appellee is not before an appellate court unless cross-appealed. In any event, however, we believe the trial court correctly ruled that the petitioner came within the protection of section 247a(4) of the Revenue Act of 1939. We therefore confine our consideration to the question raised as to whether the trial court erred in allowing only a token award which confirms the petitioner's right to indemnity but gives her no relief.

The evidence in this case indicates that the petitioner is a registered nurse who was employed in such capacity from 1974 until the time of trial. After completing high school, she studied for three years in a nurses' training program. Prior to his death in October 1968, petitioner's husband, Harry G. Tharp, managed all the business affairs for the family, including the payment of all bills. Subsequent to her husband's death, Gordon Humphrey, the petitioner's attorney, began to assist petitioner in the management of her business affairs. The attorney showed her how to write checks, pay the bills, manage her checking account, and prepare her income tax returns. Despite his help, petitioner frequently had problems paying her telephone, electric and insurance bills on time and experienced difficulty writing out her checks correctly. While she had the money to pay her bills, sometimes she forgot to pay them. Petitioner further testified that, subsequent to her husband's death, she began to pay the real estate taxes on her home upon being reminded to do so by her attorney. In 1975 the petitioner's attorney died, at which time she began to assume the responsibility for the payment of her bills.

The petitioner "supposed" she received a 1975 tax bill around March 1, 1976, and acknowledged that she did not pay it. She stated that she failed to pay the real estate tax bill because she felt "completely lost" after the recent death of her attorney. She remembered receiving a "Take Notice" stating that her property had been sold for delinquent taxes; although she read this notice, she did not understand it. The petitioner stated that she did not do anything upon being advised that her house had been sold for the failure to pay back taxes because she felt overwhelmed by financial and business affairs. Her only thought was that if her attorney were alive, he would know what to do. The petitioner related that she did have sufficient funds to pay the real estate taxes in 1976. Finally, she stated that her daughter was sick often during the years 1975 through 1979.

Mary Tharp, petitioner's daughter, corroborated her mother's testimony that her father managed all the business affairs of the family; that Attorney Humphrey helped her mother quite a bit with the payment of bills and the writing of checks after her father died, and that Mary was often ill. Mary further related that her social security benefits were discontinued for a two-year period when she was in school because her mother failed to respond to an inquiry from the social security office regarding whether her daughter was still enrolled in school. Lastly, the parties stipulated that the fair market value of the subject property was $75,000 at the date that the tax deed was issued and that there were no mortgages or liens outstanding against the property as of that date.

Since this appears to be a case of first impression, we have no direct precedents to aid us. The cases relied upon by the parties on appeal (*In re Application of County Collector* (1978), 59 Ill. App. 3d 494; *Garcia v. Rosewell* (1976), 43 Ill. App. 3d 512) were adjudicated under the provisions of the prior statute and addressed the question whether the petitioners in those cases were precluded, as the result of fault or negligence on their part, from receiving indemnification for the loss or damage sustained by the issuance of a tax deed.

In *Garcia v. Rosewell* (1976), 43 Ill. App. 3d 512, the court determined that the plaintiff was not negligent or at fault within the meaning of the statute where there was evidence her failure to redeem the property was the result of fraud or deception and given the fact that she had a dying husband and was caring for nine children at the time. The court, noting that the plaintiff could not be held to the highest standard of business conduct under such circumstances, reversed the cause and remanded it to the trial court with directions to determine the value of the property and enter judgment for the plaintiff accordingly. The *Garcia* court, recognizing that the statute was enacted to provide a remedy for the harsh results brought about by the legislative policy favoring the collection of taxes and the merchantability of tax deeds, emphasized that the statutory purpose is to do equity and that each case must be decided on its own facts. (43 Ill. App. 3d 512, 517-18.) On the other hand, in *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, the court distinguished *Garcia* and determined that the petitioner's loss was the result of fault or negligence on her part where the evidence disclosed that she was well educated, had taken courses in real estate and real estate law, had previously redeemed property sold for taxes, and did not seek advice because she didn't want to impose upon her friends. The court concluded that the petitioner's failure to redeem her property was the result of indifference, inaction, or a willful failure to act. 59 Ill. App. 3d 494, 498-99.

The thrust of the petitioner's contention on appeal is that, once the

trial court determined that she was entitled to compensation under the amended statute as the result of the issuance of a tax deed, the court below was bound to enter judgment in her favor for the fair cash value of her home ($75,000), because section 247a(4) states that any owner who is equitably entitled to receive just compensation "has the right to indemnity for the loss or damage sustained." (Ill. Rev. Stat. 1979, ch. 120, par. 728a(4).) In support of her position here, she relies on the court's mandate in *Garcia*, set forth above, which appears to require the trial court, upon remand, to enter judgment in the amount of the fair market value of the property.

In the case at hand, the parties stipulated that the value of the property as of the date the tax deed issued was $75,000. The parties further stipulated. that there were no mortgages or liens against the property as of the date the tax deed issued. A real estate expert's written appraisal of the property setting the value as of the date the tax deed issued at $75,000 was offered and admitted into evidence by stipulation. No other evidence as to value was offered at trial.

In awarding indemnity of $1, the trial court's reasoning was stated as follows:

> "However, when it comes to the equity situation, I feel that taking the record as a whole and considering it all,—the fact that this woman fortunately is employed, has a better than average job, has a better than average income and can take care of herself—I find few equities with her.
>
> If this were an elderly, senile couple that this had happened to that could not support themselves and were destitute, this sort of conduct might call for a more generous award.
>
> And, of course, the practicality of the matter which really isn't determinative, is that there is very little money in this fund in Kane County and any substantial award would have to be paid over a number of years, which then in turn, might well block some future claimant who was in a far more destitute situation.
>
> I will adopt the suggestion of the State's Attorney— and find the recovery for the plaintiff in the amount of $1."

It is clear that the trial court was concerned with the "equities of the situation" in determining the amount of indemnity. We determine this to be the wrong approach and therefore reverse. In our view, the court must make a two-pronged determination. First, the court must determine if the petitioner is "equitably entitled to just compensation" and secondly, the court must determine the amount of such recovery.

Once the trial court has determined, as here it so determined, that the petitioner is equitably entitled to a recovery against the fund, then all that remains is for the trial court to make the determination of the amount.

The statute delineates the amount to be recovered by one such as petitioner who:

> "* * * in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation, *has the right to indemnity for the loss or damage sustained.* Indemnity shall be limited to the fair cash value of the real estate as of the date that the tax deed issued, less any mortgages or liens thereon." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 728a(4).

■■ This section of the statute fixing the amount of damages is not left to the discretion of the trial court, but rather mandates that there is a "right to indemnity for the loss or damage sustained." Here, the stipulated and uncontradicted loss was in the amount of $75,000. The use of the phrase "limited to" clearly is intended to prevent a property owner from recovering more than the equity in the property by requiring that the value of any liens or mortgages be deducted from the market value. This limiting language fixes a date certain to determine the amount of recovery and bars recovery of any other actual, consequential or punitive damages as well as fees, costs and expenses of litigation.

Because the trial court applied the wrong standards in this case, we reverse and remand for a new trial on the issues.

The respondent has argued that the trial court should consider the condition and income of the fund in making its determination. The trial court alluded to this but found that the amount of the fund was not determinative. We agree with the trial court in this regard.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded for a new trial.

Judgment reversed; cause remanded for a new trial.

REINHARD and VAN DEUSEN, JJ., concur.