135 Ill. App.3d 796 (1985)
482 N.E.2d 161
In re APPLICATION OF KANE COUNTY COLLECTOR (Virginia J. Tharp, Petitioner-Appellant,
v.
Robert Critton, Kane County Treasurer, et al., Respondent-Appellee).
No. 84-785.
Illinois Appellate Court  Second District.
Opinion filed August 13, 1985.
*797 Steven A. Salzman, of Firsel & Salzman, Ltd., of Chicago, for appellant.
Robert J. Morrow, State's Attorney, of Geneva (Patricia Johnson Lord and David R. Akemann, Assistant State's Attorneys, of counsel), for *798 appellee.
Judgment affirmed.
JUSTICE UNVERZAGT delivered the opinion of the court:
Petitioner, Virginia J. Tharp, appeals for the second time the judgment of the circuit court of Kane County entered on her petition for indemnity filed pursuant to section 247a(4) of the Revenue Act of 1939 (the Act), which section is designed to ameliorate in some instances the harsh consequences of a tax foreclosure. Ill. Rev. Stat. 1979, ch. 120, par. 728a(4).
Petitioner lost her home, located at 825 Royal Lane, Dundee, for nonpayment of real estate taxes for 1975. A tax deed was issued to Michael Lapat on December 21, 1979, after the redemption period expired. After a hearing on the petition, the trial court awarded her $1 as indemnity. On appeal, she asserted that the trial court erred in not awarding indemnity in the amount of the fair cash value of the subject property: $75,000. This court determined that section of the Act required the court to make a two-pronged determination: first, whether the petitioner is "equitably entitled to just compensation" and, second, the amount of such compensation. (In re Application of Kane County Collector (1981), 102 Ill. App.3d 43, 45.) We determined that the amount of the compensation to be awarded is not discretionary with the court, but is delineated by the statute; i.e., fair cash value of the real estate as of the date that the tax deed issued, less any mortgages or liens thereon. (Ill. Rev. Stat. 1979, ch. 120, par. 728a(4).) Because it was clear that the trial court was concerned with the "equities of the situation" in awarding petitioner $1 as indemnity, we concluded the trial court applied the wrong standards in the case, and we reversed and remanded "for a new trial on the issues." (In re Application of Kane County Collector (1981), 102 Ill. App.3d 43, 49.) Petitioner now appeals from the judgment of the circuit court entered upon retrial that she was not entitled to the equity relief sought.
Petitioner contends that (1) the trial court's denial of indemnity was contrary to the law of the case as established by this court's first opinion; (2) the denial of indemnity was against the manifest weight of the evidence; and (3) the denial of indemnity frustrates the purpose of the statute and the legislative intent.

LAW OF THE CASE
Petitioner asserts she proved her entitlement to the indemnity to the first trial court and that this court agreed, thereby establishing the law of the case on point one of the two-pronged tests; i.e., "the trial court correctly ruled that the petitioner came within the protection *799 of section 247a(4) of the Revenue Act of 1939." (In re Application of Kane County Collector (1981), 102 Ill. App.3d 43, 46.) Consequently, having confined its consideration to the question whether the trial court erred in allowing only a token award which "confirms [her] right to indemnity but gives her no relief," petitioner contends this court's determination that the amount of the damages is not discretionary but must be for the loss or damage sustained amounts to a specific finding that the amount of the award to petitioner should have been $75,000, the value of the property as stipulated to by the parties. Petitioner asserts the trial court's refusal after remand to enter an order awarding her that amount was error. The trial court also refused to grant petitioner's motion after remand seeking the same relief by way of summary judgment; however, petitioner's brief contains no argument on that issue and it is not considered here.
 1 As respondent points out, however, it is clear that the thrust of this court's first opinion was that the trial court had used the wrong approach when it determined that the "equities of the situation" warranted an award of only $1 to petitioner as indemnity. As noted above, we ruled that the trial court should have made a two-pronged determination rather than an award based on the "equities of the situation." (102 Ill. App.3d 43, 48.) Because the trial court used the wrong approach in making its decision, its $1 indemnity award was an anomaly, since if the trial court was of the opinion that the petitioner was entitled to indemnity, its award should have reflected the amount of the loss sustained by her. If the trial court did not believe petitioner was entitled to indemnity, no award of any kind would have been warranted. Our determination that petitioner "came within the protection of section 247a(4)" is not synonymous with a finding that petitioner was entitled to indemnity. Our determination in that regard was made in passing favorably on petitioner's motion to strike respondent's argument on appeal on the applicability of the amendatory provisions of Public Act 81-512 to the cause at bar because respondent failed to file a cross-appeal. Effective January 1, 1980, the amendment in question added to the statute words which "simply add[ed] an additional remedy to another class of persons" (In re Application of the Cook County Treasurer & Ex-Officio Collector (1983), 119 Ill. App.3d 212, 215), to which class this court determined petitioner belonged. (In re Application of Kane County Collector (1981), 102 Ill. App.3d 43, 45-46.) Section 247a(4) of the Act, with the added words shown in italics, provides:
"(4) Any owner of real estate sold pursuant to any provision of this Act at a sale held subsequent to September 1, 1970, who *800 without fault or negligence of his own sustains loss or damage by reason of the issuance of a tax deed pursuant to Sections 266 or 266a, and who is barred or in any way precluded from bringing an action for the recovery of such real estate or any owner or [sic] property containing four or less dwelling units who resided thereon the last day of the period of redemption who, in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation, has the right to indemnity for the loss or damage sustained. Indemnity shall be limited to the fair cash value of the real estate as of the date that the tax deed was issued, less any mortgages or liens thereon." Ill. Rev. Stat., 1984 Supp., ch. 120, par. 728a(4).
 2 The respondent had argued before the first trial court that the statute as amended by this language did not govern the case since the tax sale was held and the tax deed issued prior to the effective date of the amendatory provision. It is clear, however, that where an amendment is remedial in nature, all rights of action thereunder will be enforceable under the new procedure, without regard to whether they accrued before or after such change of law or whether suit had been instituted or not, unless there is a savings clause as to existing litigation. (Sostak v. Sostak (1983), 113 Ill. App.3d 954, 960; Maiter v. Chicago Board of Education (1980), 82 Ill.2d 373, 390, cert. denied (1981), 451 U.S. 921, 68 L.Ed.2d 312, 101 S.Ct. 2000.) Consequently, this court determined that the petitioner "came within" its protection.
As petitioner argues, it is true that the "law of the case" as decided on a previous appeal is binding on both the trial court and the appellate court in subsequent appeals (Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc. (1984), 127 Ill. App.3d 589, 591), save, for instance, where in the interim the supreme court decides the precise question contrary to the rule announced in the appellate court. (Relph v. Board of Education (1981), 84 Ill.2d 436, 443-44 (reversing Hagopian v. Board of Education (1980), 83 Ill. App.3d 1097.)
"[T]he rule that a trial court is bound by the law of the case, as found by a court on appeal, is not applicable to issues of fact [citations], and matters concerning the merits of the controversy between the parties which were presented to but not decided by the appellate court can be relitigated on remand [citations]." Zokoych v. Spalding (1980), 84 Ill. App.3d 661, 667.
 3, 4 Further, it has been established that the correctness of a trial court's action on remand is to be determined from the appellate court's mandate, as opposed to the appellate court's opinion unless, of *801 course, the mandate directs the trial court to proceed in conformity with the opinion. (PSL Realty Co. v. Granite Investment Co. (1981), 86 Ill.2d 291; Perrin v. Pioneer National Title Insurance Co. (1982), 108 Ill. App.3d 181.) Although the common law record provided this court by petitioner failed to include a copy of the mandate in violation of Supreme Court Rule 321 (87 Ill.2d R. 321), this court may take judicial notice of its own records in the same case before it. (State Farm Mutual Automobile Insurance Co. v. Grebner (1971), 132 Ill. App.2d 234; Brantley v. Delnor Hospital, Inc. (1970), 120 Ill. App.2d 185.) The mandate issued at bar directed only that "the judgment of the trial court is reversed and the cause remanded for a new trial." Had it been this court's intention to have judgment entered in petitioner's favor for the full cash value of the loss sustained by her as shown by the evidence in the first trial, it was within this court's power to specifically order such relief in our mandate to the trial court. (87 Ill.2d R. 366.) That action was not taken; rather, we remanded the cause so that the trial court could reconsider the petition using the "correct" two-pronged approach as determined in our opinion. Our opinion specifically noted that the cause was being reversed and remanded for a new trial on the issues because the trial court had applied the wrong standard in the case. The clear implication is that a de novo hearing was being mandated. A new trial is a trial de novo, and the subsequent trial judge is not bound by the findings of his predecessor. Travelers Insurance Co. v. Robert R. Anderson Co. (1983), 112 Ill. App.3d 812, 817.
Accordingly, the court below did not err in refusing to simply enter judgment in petitioner's favor.

ABUSE OF DISCRETION
Petitioner next contends the trial court's judgment was against the manifest weight of the evidence. Specifically, petitioner asserts the trial court erred in its reasoning that her ability to continue to work as a nurse bore any relationship to her ability to manage business and financial affairs such as the payment of real estate taxes. She characterizes the record as being "replete with evidence" indicating she was unable to manage her business affairs subsequent to the death of her husband and, later, her attorney.
Respondent argues the evidence presented does not show petitioner was so depressed as to have rendered her helpless to cope with her financial affairs; rather, that sometimes she simply chose not to handle them.
The evidence presented at the second trial consisted of the testimony *802 of three witnesses. Petitioner, Virginia Tharp, testified that her husband, Harry Tharp, died in October of 1968. In 1969 she moved into the residence located at 825 Royal Lane in Dundee. Her daughter, Mary Tharp, lived with her at all relevant times. Her other daughter, Susan, resided with her until 1971 or 1972. Petitioner's education included grade school, high school, and three years of nurses' training. For the previous eight years, she was employed as a registered nurse at the Americana Nursing Home in Elgin. While he was alive, her husband managed all the household business affairs, and she never had occasion to pay any of the bills or write a check. After her husband died, A. Gordon Humphrey, her attorney, gave her a great deal of assistance in the management of her financial affairs, including showing her how to pay bills and write checks. Humphrey had a stroke in December of 1972, and died in June of 1973.
Petitioner testified that her electricity was turned off on one occasion because she forgot to pay the bill; that her telephone was disconnected on one occasion because she did not pay the bill; that her insurance policy was cancelled about five times for failure to pay the bills, but she was reinstated each time; that her Field's charge card was cancelled for failure to pay the bills; and, finally, that her daughter, Mary, did not receive social security checks for a period of about two years because petitioner had not done anything with the social security information which was sent to her. Petitioner testified that during the period 1975 to 1979 when she would receive bills, she would think to herself: "Oh, no, now I've got to write these out," and she would just lay them on the desk. She stated that sometimes she would not even open them. Petitioner testified that from 1976 to 1979 she was "really depressed" and that she "mentally wasn't feeling too good but [she] was able to go to work every day." She testified that she had a lot of headaches, sinus trouble and her neck hurt a lot, but that she was not seeing a doctor. She thought about getting some kind of counseling, but did not because of the location of the office; she thought that she would probably get lost. Petitioner testified that her daughter, Mary, then in high school, was ill and had to be taken to several doctors.
Petitioner paid her 1972 property tax bill which was due in 1973, and paid her 1973 property tax bill due in 1974. She failed to pay her 1974 property tax bill which was due in 1975, but subsequently redeemed those taxes in 1978 upon the advice of James Humphrey, the son of A. Gordon Humphrey, who is also an attorney. Petitioner failed to pay her property tax bill for the year 1975, due in 1976. She received two notices regarding redemption of those taxes. The first, respondent's *803 exhibit A, stated in bold print that: "THIS PROPERTY HAS BEEN SOLD FOR DELINQUENT TAXES," identifying the property as being located at 825 Royal Lane and indicating that the period for redemption from the sale would expire on June 13, 1979. Petitioner recalled a person in uniform delivering something she had to sign for, but she did not recall if it was the notice marked exhibit A. The second notice, respondent's exhibit B, read in part:
"This notice is to advise you that the above property has been sold for delinquent taxes and that the period of redemption from the sale will expire on December 13, 1979."
In bold print the notice also stated: "YOU ARE URGED TO REDEEM IMMEDIATELY TO PREVENT LOSS OF PROPERTY."
Petitioner testified that she probably received the notices that taxes were due, but that "they just maybe laid on my desk." She later testified that she ignored the notices telling her that if she did not pay the taxes, she would lose her house. When asked why she failed to pay her 1975 tax bill, petitioner replied:
"Well, I was just  I was so depressed and overwhelmed just by everything. I mean it was just one thing after another."
On cross-examination, counsel asked petitioner if she recalled responding to that same question in the original hearing in August of 1980, in the following way:
"Oh, that was about the time my attorney died. I was just completely lost. I felt like I was on my own."
She responded: "That's the way I felt * * *." As the record reflects, A. Gordon Humphrey died in June of 1973. As petitioner testified, after that time she did pay her 1972 and 1973 taxes, and redeemed her unpaid 1974 taxes in 1978. According to petitioner's testimony, the depression which caused her to fail to pay her 1975 taxes or to redeem them by December of 1979, ended in November of 1979, when her sister, Mary Theis, took her to a meeting of a group of women called Women Aglow where petitioner testified she received Jesus Christ as her savior.
Petitioner testified that she was a good nurse, that she could read and follow doctors' orders regarding care of patients and could deal with emergencies that arose. She also testified that she hired an individual to do her income tax for her, that she was able to hire doctors for her daughter during her illness and to follow up on the treatment and medication prescribed by those doctors, and that she went to attorney James Humphrey in 1978 with regard to one overdue tax bill.
Mary Tharp testified that she lived with her mother, petitioner, at the Royal Lane address until September 1983. She testified that her *804 father died in October 1968, and that until he died he managed the business affairs for the family. After her father passed away, her mother would call Mr. Humphrey frequently to ask him questions about bills, writing checks, and anything that came in the mail that she did not know what to do with. She also recalled one occasion when their electricity was shut off and when their telephone service was disconnected. She testified that there were several instances when her mother failed to pay the insurance bill on time and would have to go to an office to have the insurance reinstated. Mary testified her mother also failed to give her information regarding social security benefits. Mary testified that she was ill from 1976 until about 1978, and that her mother took her to several doctors and did whatever the doctors told her had to be done to care for her.
When asked to describe the petitioner's health during the years 1976 through 1979, Mary Tharp replied that:
"Well, I knew she had a lot of headaches. I knew she was unhappy, but I kind of had my own life and I didn't keep in touch with her as much. And so I didn't know a lot of how she felt. She'd mention a headache or she was so tired, but that's about all I ever knew."
Mary Theis, the petitioner's sister, testified that she saw her sister about once a month, or perhaps occasionally less than once a month, from 1974 until 1979, and that she would talk with her on the telephone. She testified that when Harry Tharp died in 1968, her sister was emotionally devastated and that she would "just go off into weepings and this went on from 1968 until about 1980." Mrs. Theis testified that, in her opinion, the petitioner had been depressed. She observed that her sister did not keep her house as clean as she had in the past, and that frequently, when she visited her, the drapes were drawn. Mrs. Theis also stated that her sister was often tired, and would complain of headaches and a backache.
The following petitioner's exhibits were offered into evidence by stipulation: (1) exhibit A, a warranty deed to the subject property running to Virginia Tharp, dated August 20, 1969; (2) exhibit B, an appraisal of petitioner's property located at 825 Royal Lane, Dundee, prepared by Lawrence J. Starkman, M.A.I.; the parties stipulated that the fair market value of the subject property was $65,000; (3) exhibit C, a release in satisfaction of mortgage for the subject property. It was also stipulated that Mrs. Tharp was residing at 825 Royal Lane, Dundee, at the time the property was sold.
The respondent offered no witnesses, but submitted several agreed stipulations. First, the parties stipulated to the date of Mr. *805 Humphrey's death in June of 1973. Second, the parties stipulated that on June 21, 1973, and September 4, 1973, Virginia Tharp or her agent paid her 1972 taxes for the property that is in issue in this case, and that in September of 1974, the 1973 property taxes were also paid in Virginia Tharp's name either by herself or by her agent. Third, the parties stipulated that petitioner failed to pay her 1974 property taxes, but that she redeemed those taxes on May 9, 1978, after paying $954.33 in the amount of taxes plus $458.08 and $38.08 in penalties and $112.50 in costs to the buyer of those taxes.
Although petitioner acknowledges that section 247a(4) grants the trial court "broad discretion" in determining equitable entitlement to compensation, she nonetheless argues her position under the "manifest weight of the evidence" standard of review, without refutation by the respondent. As authority for the standard, she cites In re Application of County Collector (1978), 59 Ill. App.3d 494, 499-500. That case, however, was decided before the statute was amended by Public Act 81-512 to include relief to the class of persons to which petitioner here belongs; i.e., "or any owner or [sic] property containing four or less dwelling units who resided thereon the last day of the period of redemption who, in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation, * * *." (Ill. Rev. Stat., 1984 Supp., ch. 120, par. 728a(4).) The sole issue addressed in In re Application of County Collector was whether the specific finding of the trial court that petitioner there was "without fault or negligence" in the loss of her property was against the manifest weight of the evidence. (In re Application of County Collector (1978), 59 Ill. App.3d 494, 497.) The issue at bar is whether the trial court's judgment that the petitioner was not "equitably entitled to just compensation" was born of an abuse of its judicial discretion. As noted, whether petitioner was so entitled is a matter determined "in the opinion of the Court which issued the tax deed order." Ill. Rev. Stat., 1984 Supp., ch. 120, par. 728a(4).
As petitioner notes, the "manifest weight of the evidence" has been defined as that which is "`the clearly evident, plain and indisputable weight of the evidence.'" (In re Application of County Collector (1978), 59 Ill. App.3d 494, 499; Valasquez v. Yellow Cab Co. (1975), 32 Ill. App.3d 934.) For a judgment to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trier of fact is clearly evidence. (First Security Bank v. Bawoll (1983), 120 Ill. App.3d 787, 794.) Discretionary judicial action has been described as abused "`when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying *806 that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.'" Keen v. Davis (1969), 108 Ill. App.2d 55, 63, citing Peek v. United States (9th Cir.1963), 321 F.2d 934, cert. denied (1964), 376 U.S. 954, 11 L.Ed.2d 973, 84 S.Ct. 973.
 5 Although the respondent argued in the second trial that the court should apply the statute as it was in effect at the time the petition was filed (meaning before the amendment by Public Act 81-512, effective January 1, 1980, hence requiring a showing that petitioner's loss was sustained "without fault or negligence of her own"), respondent does not repeat his argument here. In this court's first opinion, it was noted that the court in the original trial of the matter had concluded that the case fell within the purview of the amended statute and that negligence on the part of the petitioner would not bar her from recovery. Since the respondent did not cross-appeal that specific finding, we struck his argument that the "without fault or negligence standard" should be applied, indicating in dicta that we believed the trial court correctly ruled that the petitioner came within the protection of section 247a(4) of the Act as amended. (In re Application of Kane County Collector (1981), 102 Ill. App.3d 43, 45-46.) The question subsequently was decided in In re Application of Cook County Treasurer & Ex-Officio Collector (1983), 119 Ill. App.3d 212, 214-15, where the court gave the statute as amended retroactive effect due to its remedial nature. Accordingly, petitioner's fault or negligence would not per se be a bar to her right to indemnity, and the court below properly focused on whether the petitioner was entitled to the equity relief sought.
Relevant to our consideration here, in the written opinion of the trial court below, which was incorporated by reference in its judgment, the court stated:
"The intent of the legislature as I read the statute was to assist really deserving individuals. It is my reaction that the [petitioner] suffered this loss through her own neglect and failure to pay attention to her affairs. During the time involved, she was able to carry on her professional work responsibly and capably, and her status does not qualify her for relief. There is no element of poverty or of disabling illness or injury involved, and I shall therefore enter an Order denying the relief sought."
According to Black's Law Dictionary: "In its broadest and most general signification, [`equity'] denotes the spirit and the habit of fairness, *807 justness, and right dealing which would regulate the intercourse of men with men,  the rule of doing to all others as we desire them to do to us; or, as it is expressed by Justinian, `to live honestly, to harm nobody, to render to every man his due.' [Citation.] It is therefore the synonym of natural right or justice. * * * `Equity,' in its technical sense, contradistinguished from natural and universal equity or justice, may well be described as a `portion of justice' or natural equity, not embodied in legislative enactments, or in the rules of common law, yet modified by a due regard thereto and to the complex relations and conveniences of an artificial state of society, and administered in regard to cases where the particular rights, in respect of which relief is sought come within some general class of rights enforced at law, or may be enforced without detriment or inconvenience to the community; but where, as to such particular rights, the ordinary courts of law cannot, or originally did not, clearly afford relief. [Citation.]" Black's Law Dictionary 634 (4th ed. 1951).
After reviewing the record, and even accepting as true petitioner's uncontradicted testimony at trial, we find no error in the trial court's conclusion that she was not equitably entitled to just compensation. Notwithstanding the fact we agree petitioner would not be barred from seeking relief under section 247a(4) even if the loss was caused by her negligence, we note that under evidence remarkably similar to that presented in this case, the court in In re Application of County Collector (1978), 59 Ill. App.3d 494, reversed the trial court, and found that the petitioner's loss of title there was caused by her own indifference and wilful failure to act. That case was adjudicated under the provisions of the statute prior to its amendment by Public Act 81-512, and the petitioner's fault or negligence was a bar to her receiving indemnification. Apropos the case at bar, however, the court there found that although the death of the petitioner's husband two days before the due date of the 1969 taxes may have been an excuse for her failure to pay the bill, it could not be an excuse for her failure to redeem her property almost three years later. The court rejected petitioner's contention there that she was "not equipped to handle" her tax situation, despite evidence that her husband took care of all of the financial affairs, in light of the fact she was not an uneducated person and had taken courses in real estate and real estate law. The court there further observed that although petitioner was aware of her problem, she failed to seek advice from either an attorney who was a friend of the family, or a real estate lawyer who lived next door because she "did not want to bother people or impose on friends." 59 Ill. App.3d 494, 496.
*808 In the case at bar, petitioner's husband died in 1968; she did not fail to pay her taxes until some 6 1/2 years later when the 1974 taxes became due in 1975, and, although she later redeemed those taxes in 1978, she failed to pay in 1976 or to redeem in 1979 her 1975 taxes. Despite the evidence here that petitioner was "overwhelmed" and depressed following her husband's death, the evidence also shows she was able to move to a new residence in 1969, support and care for two daughters, and work steadily as a registered nurse. Petitioner testified that her education included grade school, high school, and three years of nurses' training. She held a responsible position, and at times was in charge of other nurses on weekends. She testified she "just couldn't warm up" to her former attorney's son, James Humphrey, and that she never asked her friends for advice. It is clear from the evidence that petitioner had no lack of funds with which to pay her bills, that she was aware that the bills that she received had to be paid and  for the most part  she paid them. She was able to seek assistance for her daughter's health problems, and for help in preparing her income tax. Nonetheless, she failed to obtain counseling for herself, even though she knew she was suffering from depression, and she admittedly ignored the notices telling her she would lose her house if she did not pay the taxes due.
 6 Our view of this evidence  which also was apparently the view of the trial court  is that petitioner was not subject to any mental, physical, or financial inability to pay her taxes or to redeem her property, nor was she the victim of any administrative foul-up, which was the case in In re Application of Cook County Treasurer & Ex-Officio Collector (1983), 119 Ill. App.3d 212, nor was she the victim of any fraud or deception, as was the case in Garcia v. Rosewell (1976), 43 Ill. App.3d 512. In our view, such evidence not only meets, but exceeds, the test that "reasonable men could differ as to the propriety of the action taken by the trial court"; that is, given the evidence presented, we believe that most reasonable men would agree with the action taken by the court.
Accordingly, we conclude the trial court did not abuse its discretion in denying petitioner indemnity.

LEGISLATIVE INTENT
Petitioner's final argument is that the trial court's denial of indemnity frustrates the purpose and legislative intent of the statute as discussed in Garcia v. Rosewell (1976), 43 Ill. App.3d 512, and as the statute was further amended, since "it was clear that she was incapable of managing her business affairs during the years in question." *809 Respondent answers, and we agree, that the purpose of the statute is not frustrated where the trial court's denial of relief is supported by the record.
In construing the statute, the Garcia court considered the reasons and necessity for the enactment, the contemporaneous conditions, existing circumstances and the object sought to be obtained by the statute. The court noted that:
"[T]he legislature acted at a time when there was a public outcry as the result of tax buyers taking advantage of unsophisticated property owners who had fallen behind on their taxes and then had fallen prey to the complexities of the tax buying procedures despite their willingness and ability to redeem their property." 43 Ill. App.3d 512, 515.
Citing to City of Chicago v. City Realty Exchange, Inc. (1970), 127 Ill. App.2d 185, 189-90, the court in Garcia referred to the policy of the Revenue Act which strongly favors placing property in the hands of those who are both willing and able to pay their taxes:
"`Sections of the Revenue Act which provide for certificates of purchase and for issuance of tax deeds are legislative means to encourage buyers at tax sales, increase collection of tax revenue by taxing authorities and free land to once again enter the stream of commerce and bear its aliquot share of the tax burden. Cherin v. The R. & C. Co., 11 Ill.2d 447, 452, 143 N.E.2d 235. It is said that tax sales have as their purpose coercion of negligent and unwilling citizens to pay their taxes. 85 CJS, Taxation, sec. 744.'" 43 Ill. App.3d 512, 516.
The Garcia court concluded the statute "was apparently enacted to provide a remedy for the harsh results caused by the legislative policy which favors the collection of taxes and the merchantability of tax deeds," and that its purpose is "to do equity." 43 Ill. App.3d 512, 517.
 7 Our review of the record of proceedings of the House and Senate at the time those bodies considered and passed Public Act 81-512 adding petitioner's class to those entitled to indemnity under section 247a(4) provides no additional illumination concerning the intent of the amendment itself. (Record of Proceedings of the 81st General Assembly, Regular Session, Third Reading in the House of Senate Bill 1089, at 61 (June 14, 1979); Third Reading in the Senate of Senate Bill 1089, at 8, 10.) Thus, we concur in the expression of the intent and purpose set forth in Garcia, and find that the denial of relief to petitioner under the previously discussed circumstances of this case does not frustrate the purpose or legislative intent of the statute. We *810 do not believe petitioner was the type of "unsophisticated" property owner the legislature had in mind when it passed the statute. Petitioner had the knowledge and the resources necessary to enable her to avoid the loss of her property. We believe a judgment affording petitioner relief under the circumstances presented in her case would itself frustrate the purpose and intent of the statute, because it would amount to tacit approval of conduct which at the least could be described as insidiously naive and, at the most, fiscally irresponsible.
The judgment of the circuit court of Kane county is affirmed.
Affirmed.
NASH and LINDBERG, JJ., concur.