PATRICIA HEDRICK, Petitioner-Appellee, v. FRED BATHON, Madison County Treasurer, as Trustee for the Indemnity Fund, Respondent-Appellant.

Fifth District   No. 5—99—0601

Opinion filed March 21, 2001.

William R. Haine, State's Attorney, of Edwardsville (Philip B. Alfeld, Assistant State's Attorney, of counsel), for appellant.

Lawrence O. Taliana, of Taliana, Rubin & Buckley, of Edwardsville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Patricia Hedrick (petitioner) lost her home after she failed to pay real estate taxes assessed against her property located at 5802 Dogwood Lane in Godfrey. Petitioner's home was sold for the nonpayment of taxes on December 16, 1992, and the tax deed to petitioner's property was issued to SI Securities on February 14, 1996. Thereafter, petitioner sought compensation for the loss of her property by filing a petition for indemnity against Fred Bathon (respondent), the Madison County treasurer, in his capacity as the trustee for the county's indemnity fund (Indemnity Fund), pursuant to section 21—295 of the Property Tax Code (Code) (35 ILCS 200/21—295 (West 1996)). Petitioner was awarded $50,000 plus costs as indemnity by the circuit court of Madison County. On appeal, respondent contends as follows: (1) petitioner failed to plead that she was barred or precluded from bringing an action for the recovery of her property, an essential element of her cause of action, (2) the trial court erred in refusing to enter a judgment against petitioner because she failed to introduce

any evidence in support of the above-mentioned essential element of her cause of action, (3) the trial court abused its discretion in concluding that the equities favored an award from the Indemnity Fund to compensate petitioner for the loss of her home, and (4) the trial court erred in admitting into evidence the amount of money previously paid into the Indemnity Fund and the amounts paid to claimants. We affirm.

## I. BACKGROUND

Petitioner filed her petition for indemnity against respondent on August 21, 1997. Petitioner alleged that she failed to pay property taxes due to her "inability to manage her own affairs due to mental illness" and not due to her own fault or negligence. Petitioner sought from the Indemnity Fund the value of her house and the costs of her suit. On August 28, 1997, respondent filed a motion to dismiss, arguing, *inter alia*, that petitioner failed to allege facts indicating that petitioner was barred or otherwise precluded from bringing an action to recover her property. The trial court denied respondent's motion. Petitioner later amended her petition, and respondent filed a second motion to dismiss, again arguing that petitioner failed to allege facts indicating that she was barred or precluded from bringing an action to recover her property. The trial court again denied this motion.

Prior to the hearing on the matter, the parties stipulated that the value of petitioner's home was $50,000. Petitioner filed a trial memorandum in which she argued that she was equitably entitled to compensation from the Indemnity Fund because the fund was solvent. Respondent objected to the introduction of evidence concerning the financial state of the fund, but the trial court allowed the evidence, stating that it would take the evidence "at its weight." The information provided to the trial court was that in Madison County in 1992, the fund contained $600,857.48. Pursuant to statute, that amount was transferred to the general fund. Thereafter, an additional $60,060 was collected in 1994, $48,540 in 1995, $55,680 in 1996, and $115,620 in 1997. Out of these funds, Madison County paid $43,516.47 in 1997 and $20,949.21 in 1998.

## II. TESTIMONY

Barrett Rochman is the chief executive officer of SI Securities, the entity that obtained the tax deed to petitioner's house on February 14, 1996. Rochman testified that SI Securities normally attempts to enter into a contract for deed with the person in possession of the house when the tax deed is issued. Rochman contacted petitioner about setting up a contract for deed, but he found petitioner to have "a general inability to work within the realm of financial structure." Rochman

described petitioner as "erratic" and "unable to follow through" on her promises. Rochman concluded that petitioner did not have control over her financial situation, and he was reluctant to force petitioner out of her house. Rochman recommended that petitioner contact an attorney in order to pursue a claim against the Indemnity Fund. Rochman specifically suggested SI Securities' attorney, Lawrence Taliana, because he knew that Mr. Taliana possessed the knowledge to handle such a matter. Even though Mr. Taliana prepared the legal documents in the underlying matter against petitioner, he agreed to handle petitioner's claim.

Petitioner was born on June 18, 1935. Petitioner moved back to Illinois in 1989. For eight years prior to that, she lived in California taking care of her grandmother. When her grandmother died, she left her house in California to petitioner. Petitioner sold the house in California and used the proceeds to purchase the house in question. There was no mortgage on the Illinois house, and it was petitioner's only asset. Petitioner admitted that she received a notice that the real estate taxes were due on her property, but she failed to pay them. Petitioner found the taxes "shocking" and "just put them away to deal with later." Petitioner also admitted that she received notices that the taxes were delinquent, but again she just tucked the notices "away until later" but never got around to dealing with them.

Petitioner explained that she does not handle problems well. In the past, her main way of coping was by drinking. Petitioner testified that over the course of the past 10 to 20 years, she has struggled with anxiety problems and that on some days she was simply so anxious that she could not leave her house. Over respondent's objection, petitioner testified that she is now undergoing counseling. At one point in her testimony, petitioner was so overwhelmed that a short pause was necessary in order for petitioner to collect herself. Petitioner had no backup plan in case she was unable to stay in the house.

On cross-examination, petitioner admitted she was her grandmother's caregiver and paid her grandmother's bills. When she moved back to Illinois, she worked part-time for the Alton-Telegraph. Petitioner liked the job, but she quit after a year because her employer refused to give her a raise that she had previously been promised. Petitioner admitted that in 1992, the year her property was sold for back taxes, she was in serious financial distress, owing her creditors $16,000. At that time, she went to Consumer Credit Counseling for assistance in managing her finances. She went back again in 1995 for additional assistance managing her finances. On both occasions, petitioner acknowledged that she owed real estate property taxes. Petitioner agreed that her financial inability to pay her property taxes was definitely part of the problem as to why the taxes were not paid.

Petitioner's daughter, Catherine McDaniel, testified that she knew that her mother had a drinking problem, but she was unaware how extensive her mother's problems were until the last two years. McDaniel explained that her mother has an anxiety disorder. She testified that her mother is getting better because of the counseling she now receives. McDaniel testified that she would help monitor the payment of real estate taxes on the property in the future.

Dr. Alexander James, a clinical psychologist, testified by way of evidence deposition on behalf of petitioner. Dr. James evaluated petitioner for the present litigation. He noted that petitioner canceled her first appointment at the last minute, failed to show up for the second appointment, and arrived with a friend for the third appointment. Dr. James believed that the only reason petitioner agreed to stay for the evaluation was that her friend was sitting next to her. Petitioner was extremely anxious. For example, she paced, burst into tears on a number of occasions and was agitated throughout the evaluation.

Petitioner was drinking heavily at the time of the evaluation and explained to Dr. James that the amount of alcohol she consumed was dependent on her mood. If petitioner was extremely anxious when she woke up in the morning, she would medicate herself with beer until she fell back to sleep. Only after that could she get up and face the day. She suffered from panic attacks and was basically homebound. She avoided social situations due to her fear of humiliation and rejection. At the time, she was smoking "upwards of four packs of cigarettes a day." Dr. James administered the Millon Clinical Multiaxial Inventory test to petitioner. The results indicated that petitioner has a poor self-image, which would account for her avoidance of social contact and intimate involvement. The test also revealed that even though petitioner is extremely needy, she is reluctant to seek help from anyone. Her pattern of responses to the test questions also showed that she is highly reactive to emotional stimuli, and if anything goes wrong in her life, she takes it particularly hard, and it becomes extremely difficult for her to continue functioning.

Dr. James diagnosed petitioner with panic disorder, agoraphobia, avoidant personality disorder, and alcohol abuse with suspected alcohol dependence. He believes that petitioner's panic attacks started in adulthood, while the avoidant personality disorder most likely started in childhood. Dr. James opined that petitioner's condition would have interfered with her ability to pay her taxes on time and her ability to deal with the resulting problems caused by failing to pay the taxes on time. Dr. James did not have access to petitioner's medical records, nor did he interview anyone but petitioner. Dr. James' opinions were

based solely on the history petitioner provided him, his impressions of her, and the results of the test he administered.

Respondent produced no evidence but, rather, relied solely on challenging petitioner's evidence. Ultimately, the trial court found in favor of petitioner in the amount of $50,000 plus costs. Respondent now appeals.

## III. ANALYSIS

Respondent first contends that petitioner failed to plead and prove an essential element of her cause of action. Respondent insists that an essential element of this cause of action requires petitioner to plead and prove that she was barred or in some way precluded from bringing an action for the recovery of the property. Respondent also argues that because petitioner failed to introduce any evidence to show that she was barred or in some way precluded from bringing an action for the recovery of her property, the trial court should have entered a judgment against petitioner. We disagree.

■ Section 21—295 of the Code is designed to alleviate the harsh consequences of a tax foreclosure in certain situations. It provides that each person purchasing property in counties of less than 3 million inhabitants shall pay a fee of $20, and in counties of greater than 3 million inhabitants shall pay a fee of $80, to the county collector for the creation of an indemnity fund. 35 ILCS 200/21—295 (West 1996). Section 21—305 of the Code specifically provides as follows:

"§ 21—305. Payments from Indemnity Fund.

(a) Any owner of property sold under any provision of this Code[ ] who without fault or negligence of his or her own sustains loss or damage by reason of the issuance of a tax deed under Sections 22—40 or 21—445 and who is barred or in any way precluded from bringing an action for the recovery of the property *or any owner of property containing 4 or less dwelling units who resided thereon the last day of the period of redemption who, in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation*, has the right to indemnity for the loss or damage sustained. Indemnity shall be limited to the fair cash value of the property as of the date that the tax deed was issued, less any mortgages or liens thereon." (Emphasis added.) 35 ILCS 200/21—305(a) (West 1996).

Section (b) goes on to provide that the enactment should be liberally construed "to provide compensation wherever in the discretion of the Court the equities warrant such action." 35 ILCS 200/21—305(b) (West 1996).

■ Our determination in this case rests upon well-accepted rules of statutory interpretation. Statutory interpretation is the process by

which the intent of the legislature is ascertained and given effect, primarily by looking to the statute's actual words, which are to be given their commonly accepted meanings unless otherwise defined by our General Assembly. *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill. App. 3d 610, 612-13, 483 N.E.2d 613, 615-16 (1985). As used in its ordinary sense, the term "or" is disjunctive and indicates that in a sentence the various words which it connects are to be taken separately. *People v. Frieberg*, 147 Ill. 2d 326, 349, 589 N.E.2d 508, 518-19 (1992); *People v. Vraniak*, 5 Ill. 2d 384, 389-90, 125 N.E.2d 513, 517 (1955). A construction of the word "or" in the conjunctive rather than the disjunctive is only permissible when a literal reading is inconsistent with an apparent legislative intent. *Apex Oil Co. v. Henkhaus*, 118 Ill. App. 3d 273, 279, 454 N.E.2d 1032, 1037 (1983).

■ In interpreting the statute in question in the instant case, the term "or" should be given its ordinary meaning, that is to say, the two phrases that the word "or" connects are to be taken separately. Other courts have used our interpretation of the statute and allowed compensation to a real estate owner whose property was sold at a tax sale even though the sale was the owner's fault. For example, in *In re Application of Cook County Collector*, 174 Ill. App. 3d 981, 529 N.E.2d 570 (1988), the court noted that the above-emphasized language was added pursuant to Public Act 81—512 and became effective on January 1, 1980. Pub. Act 81—512, eff. January 1, 1980. See Ill. Rev. Stat. 1985, ch. 120, par. 728a(4) (the predecessor to section 21—305(a)). That court stated as follows:

"In sum, the 1980 amendment now permits a trial court to compensate a real estate owner whose property was sold at a tax sale, even though the tax sale took place as a result of the real estate owner's fault or negligence, *if* the court concludes that the real estate owner is nevertheless *equitably entitled* to just compensation. (*In re Application of Kane County Collector* (1985), 135 Ill. App. 3d 796, 806, 482 N.E.2d 161[, 167].) In essence, the 1980 amendment provides a remedy to an additional class of real estate owners (*In re Application of The Cook County Treasurer & Ex-officio Collector* (1983), 119 Ill. App. 3d 212, 215, 456 N.E.2d 221[, 223]) wherein the trial court does not focus upon whether the real estate owner is negligent or with fault, but rather whether the real estate owner is equitably entitled to the relief sought. *In re Application of Kane County Collector*, 135 Ill. App. 3d at 806 [,482 N.E.2d at 167]." (Emphasis in original.) *In re Application of Cook County Collector*, 174 Ill. App. 3d at 984, 529 N.E.2d at 572.

Accordingly, and in light of the fact that the statute is to be interpreted liberally, we believe that a plaintiff need not show that he or she is without fault or negligence, but a plaintiff need only prove that he or

she is equitably entitled to relief if the property in question contains four or fewer dwelling units and the owner resided in the property.

In the instant case, petitioner did not fail to plead and prove an essential element of her cause of action. Petitioner met the requirements of the second portion of the statute by showing that she was the owner of the property, that the property contained fewer than four dwelling units, and that she lived in the property on the last day for redemption. Likewise, the trial court did not err in refusing to enter a judgment against petitioner, because it was unnecessary for her to plead and prove that the tax deed could not have been challenged.

Respondent cites *In re Application of County Treasurer & ex officio County Collector*, 301 Ill. App. 3d 883, 704 N.E.2d 1003 (1999), in support of his contention that petitioner was required to plead and prove that she was barred or in some way precluded from bringing an action for the recovery of her property. However, we agree with petitioner that *In re County Treasurer* is distinguishable from the case at bar because the property in that case was a six-unit apartment building. The relevant language of the indemnity statute specifically states that relief may be granted to "any owner of property containing 4 or less dwelling units" (emphasis added) provided that the trial court finds that the petitioner is equitably entitled to indemnity. 35 ILCS 200/21—305 (West 1996). Respondent's reliance on that case is, therefore, misplaced.

Respondent next argues that the trial court abused its discretion in concluding that the equities favored an award from the Indemnity Fund to compensate petitioner for the loss of her home. Respondent insists that the only reason petitioner was unable to pay her taxes was her precarious financial condition and that this alone is insufficient to support a claim for indemnity. However, we agree with petitioner that there is adequate evidence in the record to support the trial court's determination that petitioner is entitled to indemnity.

A trial court has broad discretion in determining whether an owner is entitled to compensation, and its conclusions will not be disturbed on appeal absent an abuse of that discretion. *In re Application of Kane County Collector*, 135 Ill. App. 3d 796, 805, 482 N.E.2d 161, 167 (1985). Discretion is abused only where no reasonable person would take the view adopted by the trial court. *In re Application of Kane County Collector*, 135 Ill. App. 3d at 805-06, 482 N.E.2d at 167. Because the indemnity statute was enacted to provide a remedy for harsh results and its stated purpose is to do equity, each indemnity fund case must be decided on its own facts. *Kirk v. Rosewell*, 225 Ill. App. 3d 326, 330, 587 N.E.2d 1214, 1216 (1992).

In the instant case, the trial court's order specifically states,

"Based on the testimony concerning petitioner's financial status, her mental health, and underemployment, it is the finding of this court that [petitioner] is entitled to an award from the indemnity fund." The trial court's order makes it clear that the award to petitioner was based upon more than petitioner's precarious financial condition. There is sufficient evidence in the record to support the trial court's determination that petitioner's mental condition played a role in her inability to pay taxes. It is of note that the case originated when Barrett Rochman, chief executive officer of the company that purchased the tax deed to petitioner's property, concluded that petitioner's case was unique, and he was reluctant to force her out of her house. Rochman described petitioner as "erratic" and "unable to follow through" on her promises. He found her to have "a general inability to work within the realm of financial structure."

Moreover, petitioner testified that over the course of the past 10 to 20 years, she has struggled with anxiety problems. Petitioner explained that on some days she was simply so anxious she could not leave her house. With regard to the tax bill, petitioner stated that she found the taxes "shocking" and just set them aside to deal with later. The hearing itself was a source of anxiety for petitioner, who became so upset during her testimony that a short recess was necessary in order for petitioner to compose herself and continue her testimony. While petitioner admitted that her poor financial condition was a part of the reason she failed to pay taxes, it is evident that petitioner could have found a way to pay the taxes if she was thinking clearly. There was no mortgage on the house, and petitioner could have used the house as collateral for a loan. The record before us indicates that factors other than petitioner's precarious financial condition played a role in petitioner's failure to pay her real estate taxes. Dr. James' testimony is particularly enlightening.

Dr. James, a clinical psychologist, diagnosed petitioner as suffering from panic disorder, agoraphobia, avoidant personality disorder, and alcohol abuse with suspected alcohol dependence. Dr. James believed that some of petitioner's problems began in childhood, while others did not manifest themselves until adulthood. Psychological testing revealed that petitioner has a poor self-image and that she is reluctant to seek help from anyone. Dr. James testified that petitioner's condition would have interfered with her ability to pay her taxes on time and her ability to deal with the resulting problems caused by her failure to pay the taxes on time. Under these circumstances, we cannot say that the trial court abused its discretion in determining that petitioner was entitled to compensation.

Furthermore, we deem it unnecessary for us to determine at this

time whether a precarious financial condition alone is sufficient to support a petitioner's claim for indemnity. Here, the record indicates that petitioner's failure to pay her taxes was due to more than just her lack of funds. As noted in the trial court's order, petitioner's mental health also played a role in her failure to pay her taxes. Respondent's attempt to analogize the instant case to *In re Application of Kane County Collector* fails because that court specifically found that "a judgment affording petitioner relief *** would amount to tacit approval of conduct which at the least could be described as insidiously naive and, at the most, fiscally irresponsible." *In re Application of Kane County Collector*, 135 Ill. App. 3d at 810, 482 N.E.2d at 170. Here, a clinical psychologist testified that petitioner's mental condition interfered with her ability to pay her taxes, and petitioner was undergoing counseling for her mental condition. Accordingly, the trial court was within the limits of its considerable discretion in finding that petitioner was equitably entitled to compensation.

Respondent's final contention on appeal is that the trial court erred in admitting into evidence the amount of money previously paid into the Indemnity Fund and the amounts paid to claimants. Petitioner responds that the amount of money in the fund should not be determinative but that it is a factor the trial court can consider in making its determination. We agree with petitioner.

" '[E]quity' denotes the spirit *** of fairness, justness, and right dealing which would regulate the intercourse of men with men." Black's Law Dictionary 484 (5th ed. 1979), citing *Gilles v. Department of Human Resources Development*, 11 Cal. 3d 313, 320, 113 Cal. Rptr. 374, 380, 521 P.2d 110, 114 (1974). Section 21—305 of the Code specifically states that indemnity will be granted to one "who, in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation." 35 ILCS 200/21—305 (West 1996). Only one case, *In re Application of Kane County Collector*, 102 Ill. App. 3d 43, 429 N.E.2d 590 (1981) (*Tharp v. Critton*), has commented upon whether the condition and income of an indemnity fund are relevant. The *Tharp* court, in an aside, stated as follows:

> "The respondent has argued that the trial court should consider the condition and income of the fund in making its determination. The trial court alluded to this but found that the amount of the fund was not determinative. We agree with the trial court in this regard." 102 Ill. App. 3d at 49, 429 N.E.2d at 594.

We do not disagree that the condition and income of the Indemnity Fund are not determinative of the case; however, we find that they are relevant factors that can be considered by a court in making its determination and balancing the equities of the case.

The record here indicates that the trial court did not place undue emphasis on the condition of the fund. Over respondent's objection the trial court allowed petitioner to introduce evidence concerning the solvency of the fund, but the court noted that it would take the evidence "at its weight." The trial court's limiting language in this regard indicates to us that the trial court did not place undue emphasis on the solvency of the fund. The trial court's final order indicates that it considered numerous other relevant factors in entering a judgment in favor of petitioner.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed.

Affirmed.

WELCH and KUEHN, JJ., concur.