MARTIN HOLMAN

v.

LEE M. GILL et al.

*Filed at Springfield October 1, 1883.*

1. PARTITION—*decree as to a part of the owners no bar to a second bill.* It is a fundamental doctrine of the law of partition that all co-tenants must be made parties to the proceeding, otherwise the decree will be no bar to a second partition, at the suit of the omitted parties.

2. SAME—*may be had, subject to life estate.* The fact that a widow may have a life estate in premises left by her husband as an estate of homestead or dower, is no bar to proceedings for partition of such premises between the heirs. Like any other intervening life estate, it could only postpone the possession of the reversion until its termination.

3. SEIZIN IN FEE—*what constitutes—heir is seized, though subject to dower in land.* A bill for partition charged that upon the death of a person his children, eight in number, became seized in fee simple, as tenants in common of certain real estate, of an undivided one-eighth share each, while the proof showed the estate of the children was subject to the widow's dower and homestead: *Held,* that there was no variance, as the heirs, in technical language, were severally seized in fee of their respective shares.

4. HOMESTEAD—*as against heirs.* Where an owner of real estate died, in 1865, leaving a widow and children, it was held that the widow, under the law then in force, had no homestead in the premises as against the heirs.

5. PRACTICE—*when to take an objection—as to variance.* If a party desires to raise the question, in this court, of variance between an allegation in a bill in chancery and the proof offered, he should make the same specifically in the court below, so as to afford an opportunity to obviate the same by amendment.

6. SAME—*when specific objection necessary.* A general objection to the evidence offered is not sufficient to raise the question of variance, but is regarded as going to the competency of the evidence. Equity always looks to the real substance of matters put in evidence, and will disregard mere technical objections that do not affect the merits of the controversy, and which might readily be removed if the attention of the opposite party or of the court had been called to them.

7. ALLEGATIONS AND PROOFS—*variance—when immaterial.* A bill seeking the partition of real estate by a purchaser under execution of the interest of two out of eight heirs, alleged that the sheriff levied upon the lands above described, while the levy was only upon the undivided two-eighths thereof: *Held,* that the variance was clearly immaterial.

8. A party claiming as a purchaser under a judgment and execution sale and sheriff's deed, as against two of eight co-tenants, in his bill for partition alleged that he recovered judgment against such two tenants in common for $121, and costs of suit, whereas the proof showed the judgment was for $121.35. There was no proof showing the existence of any other judgment against the same parties in favor of the complainant: *Held*, that in a court of equity, where the substance and real merits are looked to more than to literal accuracy, the variance was not such as to defeat a partition.

9. JUDICIAL SALE—AND TITLE THEREUNDER—*defective return on execution.* The title of a purchaser at an execution sale can not be defeated by the failure of the sheriff to make a proper return of the execution, or, indeed, by a failure to make any return whatever. The purchaser's title depends on a valid judgment, execution, levy, and a sheriff's deed appearing on its face to have been made by virtue of a sale under such judgment and execution.

10. SAME—*variance between certificate of purchase and sheriff's deed.* A certificate of purchase showed that a purchaser bid for certain lots, and not for two-eighths interest in them, which alone was levied on, but it showed that the sheriff offered for sale the undivided two-eighths of the lots. The sheriff's deed recited that the sheriff levied on the lands thereinafter described, and the same were struck off to the grantee, and then proceeded to convey to him two of the lots, described by their numbers, and the undivided two-eighths of the other two lots: *Held*, that these discrepancies, both in the certificate of purchase and sheriff's deed, were not fatal to the title of the purchaser.

11. SHERIFF'S DEED—*statute requiring amount of judgment to be stated, construed.* The statutory provision which prescribes the form of a sheriff's deed, so far as it requires the amount of the judgment to be inserted in the deed, is merely directory. It is sufficient if it clearly appears that the deed is made by the officer in his official capacity, and in consummation of the legal proceedings upon which it is founded, with such references to the proceedings themselves as that they may be readily found and identified.

12. A sheriff's deed to H. of land, recited that H., at the August term of the circuit court of Macon county, recovered a judgment against A B and C D, for the sum of "one hundred and twenty-one —— and costs of suit," upon which judgment an execution was issued, dated September 21, 1866, directed to the sheriff of Macon county to execute: *Held*, that in the absence of proof that H. had any other judgment in that court against the same parties, there was no doubt as to the judgment referred to, and that the deed was not invalid on account of the omission of the word "dollars," in the blank.

APPEAL from the Circuit Court of Macon county; the Hon. C. B. SMITH, Judge, presiding.

Messrs. OUTTEN & VAIL, for the appellant:

It is contended that appellant is estopped, by reason of his presence and silence at the master's sale, from now claiming any interest in the property. A master's sale in a partition proceeding is a judicial sale, and the rule of *caveat emptor* applies. *McManus* v. *Keith et al.* 49 Ill. 388; *Bassett* v. *Lockard,* 60 id. 164.

A purchaser at a judicial sale is bound to know the title. *England* v. *Clark,* 4 Scam. 486; *Owings* v. *Thompson,* 3 id. 502; *Bishop et al.* v. *O'Connor et al.* 69 Ill. 431; *Walden* v. *Gridley,* 36 id. 523.

The sheriff's return to the execution is immaterial. *Phillips* v. *Coffee,* 17 Ill. 154; *Kinney* v. *Knoebel,* 47 id. 417.

The certificate of purchase has no necessary connection in the chain of title.

The omission of the word "dollars," in that part of the sheriff's deed which recites the judgment, is a mere clerical error of an officer.

The sheriff's deed could convey only the interest of the Gill heirs. The deed purporting to convey all the lots must include the lesser interest—an undivided interest, which is included in the whole. *Fisher* v. *Eslaman et al.* 68 Ill. 78.

It is sufficient if the sheriff so recites the judgment that it may be fully identified. *Hayes* v. *Bernard,* 38 Ill. 297; *Loomis* v. *Riley,* 24 id. 307; *Phillips* v. *Coffee,* 17 id. 154; *Durham* v. *Heaton,* 28 id. 264; *Swiggart* v. *Harber,* 4 Scam. 364; *Stow* v. *Steel,* 45 Ill. 328; *Kinney* v. *Knoebel,* 47 id. 417; *Jackson et al.* v. *Spink,* 59 id. 404.

Mere non-compliance with the statute by the officer does not of itself make the sale a nullity. Rev. Stat. 1845, p. 302, sec. 11.

The purchaser has the right to rely upon the judgment, execution and levy upon the property, and his deed. He can not be affected by an imperfect return, or by the fact that no return whatever was made. The statute says that the deed

shall be evidence that the law has been complied with, until the contrary be shown. *Phillips* v. *Coffee*, 17 Ill. 154; *Doe ex dem. Wolf* v. *Heath*, 7 Black, 154; *Wheaton* v. *Sexton's Lessee*, 4 Wheat. 503; *Kinney* v. *Knoebel*, 47 Ill. 417.

It has been fully settled by this court, in cases somewhat analogous to the present case, that a sale under the circumstances is only voidable; can only be corrected by the defendant in the execution; that he must act promptly, and that it can not be disturbed in a collateral proceeding. *Swiggart* v. *Harber*, 4 Scam. 364; *Phillips* v. *Coffee*, 17 Ill. 154; *Wimberly* v. *Hurst*, 33 id. 166; *Fergus* v. *Woodworth*, 44 id. 374; *Hamilton* v. *Quimby*, 46 id. 90; *Nixon* v. *Cobleigh*, 52 id. 387; *McConnell* v. *Gibson*, 12 id. 128.

Mr. J. A. BUCKINGHAM, and Mr. W. C. JOHNS, for the appellees:

When there is a variance between the allegations of the bill and the proofs, the complainant must fail. *McKay* v. *Bissett*, 5 Gilm. 499; *White* v. *Morrison*, 11 Ill. 361; *Rowan* v. *Bowles*, 21 id. 17; *Chaffin* v. *Heirs of Kimball*, 23 id. 36; *Fish* v. *Cleland*, 33 id. 238; *Bush* v. *Connelly*, id. 437; *Ohling* v. *Luitjens*, 32 id. 23; *Fergus* v. *Tinkham*, 38 id. 407.

When tenants in common, or joint owners, hold property incumbered or burdened, either may take up outstanding title, or make advances to preserve title or save property from destruction; and the one not doing so, seeking partition, must offer to contribute. *Wilton* v. *Tazewell*, 86 Ill. 29; *Louvalle* v. *Menard*, 1 Gilm. 39; *Harvey* v. *Goings*, 13 Ill. 108; *Dean* v. *O'Meara*, 47 id. 120; *Kurtz* v. *Hibner*, 55 id. 514.

There should be entire uniformity in the return to the execution, the certificate of sale, and the deed, where real estate is sold, or the sale will be invalid. *Dickerman* v. *Burgess*, 20 Ill. 267; *Johnson* v. *Adleman*, 35 id. 265; *Kinney* v. *Knoebel*, 47 id. 417; *Harmon* v. *Larned*, 58 id. 167; *Johnson* v. *Baker*,

38 id. 102; *Johnson* v. *Bantock*, id. 111; Herman on Executions, 476, 477.

It is necessary the sheriff's deed should recite the judgment upon which execution was issued and sale had.  Gross' Stat. 1869, p. 381, sec. 22.

If one so far countenance the sale of his own property as to stand by and see it sold by the sheriff or other officer as the property of, and on execution against, another, without objecting to the sale, he will be estopped to deny the validity thereof as against a *bona fide* purchaser.  Rorer on Judicial Sales, 164; *Epley* v. *Witheren*, 7 Watts, 163; *Carr* v. *Wallace*, id. 394; *Read* v. *Heasley*, 2 B. Mon. 254; *Markham* v. *O'Connor*, 52 Ga. 183.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

John Gill, on the 19th of March, 1865, died intestate, leaving a widow and eight children.  At the time of his death he was the owner in fee of lots 8 and 9, in block 2, of Plant & Tuttle's addition, and lots 5 and 6, in block 8, of Smith & Co.'s addition, to the city of Decatur, this State, being the same property now in controversy.  The lots in question constituted the homestead of the deceased, and continued to be occupied by the widow as such after his death, without any allotment of her dower.  In August, 1866, Martin Holman, the appellant, recovered in the Macon circuit court a judgment against John and William Gill, two of the children and heirs of the deceased, for the sum of $121.35, which became a lien upon their interests in the lots.  An execution was issued upon the judgment on the 21st of September, in the same year, which, in the month of October following, was levied by the sheriff on the *undivided two-eighths* of said lots. The execution was subsequently returned with the following indorsement thereon:

"This execution satisfied in full by sale of real estate to Martin Holman, on the 3d day of November, 1866, all costs paid clerk, except my own.

A. A. MURRAY, Sheriff."

No redemption having been made from said sale, John E. Jones, the then sheriff of Macon county, and successor in office of Murray, on the 24th of February, 1868, executed to Holman a deed, in the usual form, for said lots 8 and 9, and for the undivided two-eighths of lots 5 and 6. It also appears that in pursuance of a decree of the circuit court of Macon county, rendered in a partition proceeding, at its December term, 1876, said lots were sold at public vendue to Lee M. Gill, one of the present appellees, who received a master's deed therefor in pursuance of the sale. Clinton Payne, the remaining appellee, purchased one of these lots of Lee M. Gill, and claims title through him. It is conceded appellant was not made a party to the partition proceeding, and that the rights of the other heirs to the lots in question have, by virtue thereof, become extinguished. On the 29th of April, 1881, appellant brought the present bill for a second partition of the same lots, making the said John M. Gill and Clinton Payne parties. The court, upon the hearing, found the equities with appellees, and rendered a decree dismissing the bill, to reverse which Holman brings this appeal.

It is a fundamental doctrine of the law of partition that all co-tenants must be made parties to the proceeding, otherwise the decree will be no bar to a second partition at the suit of the omitted parties. (Freeman on Co-tenancy and Partition, sec. 463.) We do not understand this view of the law to be controverted; but the contention of appellees, if we do not misapprehend counsel, is, first, that the proceedings under the judgment against John and William Gill, through which appellant claims title to two undivided eighths of the land in controversy, were so irregular and defective

that appellant took nothing by them; and second, that, conceding his title to be good, the allegations in his bill with respect to those proceedings are fatally variant from the proofs,—hence it is concluded the bill, on either ground, was properly dismissed on the hearing. We do not think either of these positions tenable. In the presentation of our views we shall confine ourselves to such of the questions discussed in appellees' brief as we deem worthy of notice, and in doing so shall pursue, substantially, the same order there observed.

The first point made by appellees is, that the bill charges upon the death of John Gill his "children became seized in fee simple, as tenants in common of said premises, of an undivided one-eighth share each," while the proofs show the premises on his death were subject to the widow's dower and homestead. We discover no variance in this. There were eight of the children, and they consequently took an undivided eighth part, each, in their father's real estate, including these lots. The interest thus taken was a present vested interest, subject to no contingency whatever, and of indefinite duration, hence, in technical language, the heirs were severally seized in fee of their respective shares or interests, and the mere fact the estate was subject to the widow's dower made no difference in this respect. As to the homestead, there was none, as against the heirs, as the law then stood. But suppose there had been, that would have made no difference. Like any other intervening life estate it would only have postponed the possession of the reversioner in fee till its termination.

It is next objected the bill avers that complainant recovered a judgment against William and John Gill for $121, and costs of suit, whereas the proofs show the judgment was for $121.35, thus making a difference of thirty-five cents between the amount of the judgment as charged and proved. We do not think a variance like the one shown,—where it is clear,

as it is here, no one could have been misled or otherwise injured by it,—should be visited with consequences so fatal as to defeat the right of recovery in a mere collateral proceeding like this, especially in a court of equity, where the substance of an averment, rather than its literal accuracy, is always looked to. The substance of the charge in the bill in this case is; that Holman had recovered a judgment against two of the owners of these lots for as much as $121, and the mere fact it was for a few cents over that sum is of no consequence, especially in the absence of all evidence tending to show there were more judgments than one, or that appellees had been in any way misled by it. No specific objection was made to the introduction of this judgment when offered in evidence. Had the objection now urged been then made, the bill would doubtless have been at once amended, and thereby removed all real or apparent cause for complaint on the ground suggested. Under such circumstances we are not inclined to encourage objections of this character, when made, as this one is, for the first time in this court. The general objection made at the time, without assigning any reason upon which it was based, can only be regarded as going to the competency of the evidence, and for the purposes of the question now before us must be treated as if no objection had been made at all. While chancery procedure does not, perhaps, enforce rules governing the production of testimony with the same strictness which obtains in courts of law, or visit an infraction of them with the same serious consequences that uniformly· attend their non-observance in those courts, yet anything like culpable negligence or a willful disregard of those rules meets with as little favor in a court of equity as in a court of law. Equity always looks to the real substance of matters put in evidence, and will disregard mere technical objections that do not affect the merits of the controversy, and which might readily be removed if the attention of the opposite party, or of the court, had been

called to them. *Stow* v. *Steel*, 45 Ill. 328; *Beaver* v. *Slanker*, 94 id. 175; *Newman* v. *Willitts*, 60 id. 519.

It is well settled the title of a purchaser at an execution sale can not be defeated by the failure of the sheriff to make a proper return, or indeed, by a failure to make any return whatever. The purchaser's title depends on "a valid judgment, execution and levy, and a sheriff's deed appearing on its face to have been made by virtue of a sale under such judgment and execution." *Kinney et al.* v. *Knoebel*, 47 Ill. 417; *Phillips* v. *Coffee*, 17 id. 154; *Loomis* v. *Riley*, 24 id. 307.

It is further objected that the execution was levied on the undivided *two-eighths* of all these lots, while the bill charges the sheriff, by virtue of the execution, levied upon *the lands above described.* The variance in this respect is clearly immaterial. The averment the *lots* were levied on, fully warranted proof that the interests of the defendants in the execution were levied upon. The allegation was simply a little broader than the proof, but there was not such a repugnancy between the two as to require a rejection of the proof. The certificate of purchase shows that Holman bid for the *lots*, and not for the two-eighths interest in them, which alone was levied on, while, on the other hand, it shows the sheriff offered for sale the undivided two-eighths of said lots, and not the lots themselves. Similar discrepancies occur in the sheriff's deed. It recites, the sheriff, by virtue of the execution, *levied on the lands* thereinafter described, and the same were struck off to Holman, and then proceeds to convey to him lots 8 and 9, and the *undivided two-eighths* of lots 5 and 6. These discrepancies, both in the certificate of purchase and sheriff's deed, are relied on by appellees as fatal to appellant's right to the relief sought by his bill. For reasons already stated, we do not think they should have that effect.

The remaining objection which we shall notice, is the fact the sheriff's deed fails to recite the amount of the judgment

upon which the execution issued. This objection, we confess, on first impression struck us with considerable force, principally on the ground the form prescribed by the statute requires the amount of the judgment to be so inserted in the sheriff's deed; but upon more mature consideration we are very clear there is nothing in the objection. The statute in this respect, according to the general current of authorities, is directory merely. The amount of the judgment, which is usually recited in a sheriff's deed, is but one of the numerous means by which its execution is traceable to the proper source. It is sufficient in all cases if enough appears to clearly and unmistakably show that the deed is made by the officer in his official capacity, and in consummation of the legal proceedings upon which it is founded, with such reference to the proceedings themselves as they may be readily found and identified. (Rorer on Judicial Sales, secs. 1011—1014.) In the present case, notwithstanding the omission of the amount of the judgment in the recitals of the deed, sufficient remains to clearly point out the judgment and execution upon which the deed is based. It sets forth, by way of recital, that "Holman, at the August term, 1866, of the circuit court of Macon county, recovered a judgment against William H. and John N. Gill for the sum of one hundred and twenty-one ———— and costs of suit, upon which judgment an execution was issued, dated on the 21st day of September, 1866, directed to the sheriff of Macon county to execute," etc. With this reference, in the absence of any evidence tending to show that Holman had any other judgment in that court against the same parties, and in the absence of any claim to that effect, there clearly can be no doubt as to what judgment was intended, and no want of means by which to identify it. When this is accomplished, all the requirements of the law are met. It is manifest the want of the word "dollars," in the recital contained in the sheriff's deed, is a mere clerical omission, that any one with

ordinary sense and business experience would readily supply
from the context with almost absolute certainty, hence it is
highly improbable that any one could be misled by it.   But
if this were not so, when the recital is taken as a whole it
points so unerringly to the judgment itself, the omission is
fully supplied by the reference.   *Id certum est quod certum
reddi potest.*

In this case it is clear and unquestioned that Holman
obtained a valid judgment against William and John Gill for
$121.35, together with costs of suit, and that this judgment
was an existing lien on their interests in the lots in contro-
versy; that a valid execution was duly issued on the judg-
ment and placed in the hands of the sheriff, who levied the
same upon the undivided two-eighths of said lots.   So far
there is no question as to the validity or regularity of the pro-
ceedings.   As to the remaining portion of the proceedings,
culminating in a sale and sheriff's deed to Holman, they are
entirely regular, except in the respects already mentioned.
As to lots 5 and 6, there is scarcely the slightest pretext for
questioning the appellant's title to a two-eighths interest in
them.   As to them, a two-eighths interest was levied upon,
offered for sale, and conveyed by the sheriff's deed, so that
the title to these lots, to the extent stated, must in any event
be regarded as good.

Most of the objections urged against the proceedings seem
to us of a highly technical character, which surely does not
commend them to a court of equity, and the question now is,
shall the slight discrepancies and variances in question be
held by a court of equity, which looks mainly to the real jus-
tice and merits of a cause, to defeat appellant's title alto-
gether?   We can not give our sanction to such a conclusion.
On the contrary, we hold the two-eighths interest in these
lots having been levied upon and sold under a valid execu-
tion, followed by a sheriff's deed for the *lots*, passed to Hol-
man John and William Gill's two-eighths interest in them;

and it follows, Holman had the right to have the premises. partitioned in the manner proposed, and we have no doubt of the sufficiency of the averments in the bill to warrant the relief prayed.

The judgment of the circuit court of Macon county is therefore reversed, and the cause remanded for further proceedings in conformity with the views here expressed.

*Judgment reversed.*