RALPH PRINCE, Petitioner-Appellant, v. EDWARD J. ROSEWELL, Cook County Treasurer, as Trustee of the Indemnity Fund Created by Section 21—295 of the Property Tax Code, Respondent-Appellee.

First District (5th Division)   No. 1—99—2879

Opinion filed March 16, 2001.

Richard K. Harris, of Law Offices of Burton A. Brown, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Michael C. Prinzi, and Charles J. Cullinan, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

Petitioner Ralph Prince's property was sold at a tax sale after he failed to timely redeem it. The trial court denied his petition for equitable relief under the indemnity provision of the Property Tax Code (the Code) (35 ILCS 200/21—305 (West 1998)) and denied his motion for reconsideration. Petitioner contends on appeal that the trial court applied an incorrect standard in denying him relief from the indemnity fund, that the trial court's findings were unsupported by the evidence and, therefore, its decision was an abuse of discretion, and that the trial court erred in preventing him from testifying to a central issue in his case.

On January 3, 1978, petitioner entered into articles of agreement (1978 Agreement) with William Berke for the purchase of a home located at 3314 West Polk Street in Chicago. The one-page 1978 Agreement provided that petitioner was to pay $375 per month, which was to include principal and interest at a rate of 15% and one-twelfth of the annual real estate tax and insurance premium. From 1978 until some point prior to 1990, petitioner made his monthly payments to Com-

mercial Management Company (CMC). Petitioner subsequently defaulted under the terms of the 1978 Agreement and, on March 1, 1990, entered into superceding articles of agreement (1990 Agreement) with Berke for the purchase of the home. Under the terms of the 1990 Agreement, petitioner was to continue to pay $375 per month, which now included principal and interest at a rate of 10%. However, unlike the previous agreement, the 1990 Agreement did not include any escrow payments for real estate taxes and insurance. The new agreement provided that petitioner was responsible for the real estate taxes and insurance. That provision was emphasized with capital letters.

The 1990 and subsequent years' taxes went unpaid. On July 24, 1992, the unpaid taxes were sold by the Cook County treasurer at a forfeiture sale to MS Group. According to the subsequent tax deed proceedings, the trial court took judicial notice that on August 26, 1992, a property tax notice was mailed by the Cook County clerk to petitioner, providing him with notice of the sale of his property for nonpayment of the real estate taxes and a date by which he could redeem it from the tax buyer. It also found that on September 7, 1994, petitioner signed a certified mail notice again advising him that his property was in jeopardy for nonpayment of real estate taxes and provided a date by which he could redeem. Additionally, the sheriff of Cook County personally served notice on petitioner that same day. He was advised of the potential loss of his property and provided with the date by which he could redeem the property. Petitioner failed to redeem the property before the expiration of the redemption period and, on March 23, 1995, MS Group was issued a tax deed conveying the property to it.

Thereafter, on June 24, 1998, petitioner filed a petition for indemnity, alleging that he was equitably entitled to an award against the indemnity fund. At trial, petitioner testified that he was 72 years old and had many physical disabilities. He was blind in one eye and partially blind in the other eye, suffered from a heart attack, high blood pressure, diabetes, a pinched nerve and sclerosis of the liver. In 1996, subsequent to the issuance of the tax deed, his right leg was amputated below the knee. Because of his health problems, he stated that he stopped working in 1983. Prior to that, he had worked in several odd jobs and had served in the military. After 1983, his sole source of monthly income was through the Veteran's Administration and Social Security in the amount of about $876. Additionally, he stated that he had seven children ranging from ''50 down.'' He received monetary assistance from them whenever they were able to help him. Petitioner had no formal education beyond the fifth grade.

Petitioner testified that he did not recall being served with a notice that his property was in jeopardy due to unpaid taxes and did not receive any notices concerning the tax sale of his home. However he acknowledged that men would sometimes come to his house "dressed up" and knock on the door. He refused to open the door because his children told him not to let anyone in unless they were present. He also testified that he would wait for his children to open his mail and read it to him, which they rarely did. If they did not come by, the mail would just be "laying [sic] there." Sometimes he would misplace it.

Petitioner further acknowledged that the 1990 Agreement was a refinancing of the 1978 Agreement and that the second agreement provided that he was responsible for payment of the real estate taxes. However, he stated that he was told by someone from CMC to continue to pay the taxes to it. He produced various receipts for money orders for the years 1991 through 1994 in amounts ranging from $20 to $375 made out to CMC. Although his testimony was uncertain with regard to whether those payments were for the principal and interest or for taxes, he claimed that one of the receipts for $317 in 1991 was a tax payment. There was no other evidence presented to corroborate that fact. Petitioner had previously owned only one other property and that property was condemned and demolished by the City.

The trial court, in rendering its decision, framed the issue as "whether [petitioner] purposefully neglected or took on a cavalier attitude toward his responsibility of paying his real estate taxes, once he no longer had the compelling requirement of contributing into an escrow account of the mortgagee, and thereby substantially contributed to the loss he sustained." Despite his physical disabilities, the trial court found petitioner's testimony, that he did not fully understand his responsibilities regarding payment of taxes, that he had no notice of the tax sale or redemption process, and could not read or understand any notices, lacked credibility. Accordingly, the trial court held that petitioner was not equitably entitled to indemnity under the Code. 35 ILCS 200/21—305 (West 1998).

■ Petitioner contends that, in framing the issue, the trial court erroneously applied a "without fault or negligence" standard in determining his eligibility under the statute, rather than the correct equitable entitlement standard. While we note that in his motion for reconsideration petitioner specifically stated that the court "properly" set forth the issue before the court, we address the question on the merits. Section 21—305 of the Code provides in pertinent part:

"(a) Any owner of property sold under any provision of this Code, who without fault or negligence of his or her own sustains loss or damage by reason of the issuance of a tax deed under Sections

22—40 or 21—445 and who is barred or in any way precluded from bringing an action for the recovery of the property *or any owner of property containing 4 or less dwelling units who resided thereon the last day of the period of redemption who, in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation,* has the right to indemnity for the loss or damage sustained." (Emphasis added.) 35 ILCS 200/21—305 (West 1998).

Thus, this section allows certain property owners whose property was sold for nonpayment of taxes to be compensated for their loss, even though the sale took place as a result of their own fault or negligence, if the court finds that they are nevertheless equitably entitled to that compensation. *In re Application of Cook County Collector*, 174 Ill. App. 3d 981, 984, 529 N.E.2d 570, 572 (1988) (*Walker*).

■ Because petitioner falls within the category of "owner of property containing 4 or less dwelling units," we must therefore consider whether the trial court correctly applied an equitable entitlement standard in denying his petition. In determining the rights of a petitioner under the equitable entitlement standard, the court must examine all of the relevant factors and the totality of the circumstances without regard to fault (*Kirk v. Rosewell*, 225 Ill. App. 3d 326, 330, 587 N.E.2d 1214, 1216 (1992)).

Some relevant factors that have been considered include a mental, physical, or financial inability to pay or redeem the taxes; the level of sophistication and knowledge of the redemption process; and diligence toward fiscal responsibility. *In re Application of Kane County Collector*, 135 Ill. App. 3d 796, 808, 482 N.E.2d 161, 169 (1985) (*Tharp*); *Walker*, 174 Ill. App. 3d at 987, 529 N.E.2d at 574; *Kirk*, 225 Ill. App. 3d at 330, 587 N.E.2d at 1216. Additionally, as in any proceeding before a trier of fact, the credibility of the petitioner is also at issue. See *In re Application of the County Collector*, 295 Ill. App. 3d 711, 716, 692 N.E.2d 1290, 1293 (1998) (court not obligated to award indemnity where petitioner's testimony is incredible). Each case must be decided on its own facts (*Kirk*, 225 Ill. App. 3d at 330, 587 N.E.2d at 1216), and the court has broad discretion in making its determination (*Walker*, 174 Ill. App. 3d at 987, 529 N.E.2d at 574).

■ Applying these principles to the present case, we find the trial court correctly focused on an equitable entitlement standard in rendering its judgment. While we agree with petitioner that considering whether he "contributed to the loss he sustained" would be an inquiry into the fault of petitioner, we find no error. The court went on to examine the totality of the circumstances and considered relevant factors, including petitioner's mental, physical and financial status, his sophistication and comprehension of his responsibilities, and his

diligence with regard to those responsibilities, despite his failure to pay the taxes. The court ultimately concluded that petitioner's testimony lacked credibility. Thus, we find that the trial court applied the correct standard in rendering its decision.

■ Petitioner next contends that the trial court abused its discretion in denying him indemnity because the court's findings of fact were unsupported by the record. As stated previously, a trial court has broad discretion in determining whether a petitioner is entitled to compensation, and its conclusions will not be disturbed on review absent an abuse of that discretion. *Tharp*, 135 Ill. App. 3d at 805-06, 482 N.E.2d at 167. An abuse of discretion has been defined as action that is arbitrary, fanciful or unreasonable. Discretion is abused "only where no reasonable man would take the view adopted by the trial court." *Tharp*, 135 Ill. App. 3d at 806, 482 N.E.2d at 167.

■ Petitioner essentially argues that he was equitably entitled to relief because of the uncontroverted testimony that he paid his taxes to CMC, does not remember getting served with a notice that his property was in jeopardy, and that, even if served, he could not read it or understand it due to his lack of formal education and physical health problems. However, we find that the trial court's finding that petitioner's testimony lacked credibility was sufficiently supported by the record. Petitioner knew and acknowledged that he was responsible for paying his taxes. While he testified that he misunderstood his responsibility, he failed to produce any probative evidence to support his contention that he was mistakenly told to pay taxes to CMC after entering into the 1990 Agreement. There was no evidence to corroborate petitioner's testimony regarding the one receipt for $317.

Furthermore, contrary to his testimony that he did not receive notice of the sale of his property, the evidence established that petitioner was sent notice of the tax sale in August 1992 and was informed of the date by which he could redeem his property. Additionally, he signed for the certified mail and was served by the sheriff in September 1994, again being advised regarding his ability to redeem the property.

While petitioner testified that, even if he received the notice, he could not have read it or understood it, the court found this testimony to be incredible. While the court expressed sympathy for petitioner's poor health, it did not consider his health disabling to the degree of rendering him unable to handle his affairs. Although petitioner had no formal education, the court found that his life experience provided him with sufficient "street smarts" to understand his responsibilities. It is not the function of this court to reweigh the evidence or substitute our judgment for that of the trier of fact. *Howard v. Zack Co.*, 264 Ill. App. 3d 1012, 1025, 637 N.E.2d 1183, 1193 (1994).

We find that the trial court's finding that petitioner lacked diligence toward his responsibility to pay the taxes and redeem his property is supported by the record. Petitioner testified that, even if he did receive notices, he would wait for one of his seven children to assist him. He failed to seek their assistance with his affairs, although fully aware that his mail would lay unopened for long periods of time and fully aware that he would often misplace his mail. We have previously held that this type of behavior frustrates the purpose and intent of the statute because it amounts to "tacit approval of conduct which at the least could be described as *** fiscally irresponsible." *Tharp*, 135 Ill. App. 3d at 810, 482 N.E.2d at 170. As the trial court noted, the indemnity fund is not a charitable giveaway. Accordingly, the trial court's denial of compensation was supported by the record and was not an abuse of discretion.

■ Finally, petitioner argues that the trial court erred in not allowing him to testify as to what he would have done if he had received the notice of the tax sale, a central issue to his cause of action. Petitioner's failure to raise an objection to the ruling at trial or in his motion for reconsideration results in waiver of the right to raise this issue on appeal. *Limanowski v. Ashland Oil Co.*, 275 Ill. App. 3d 115, 118, 655 N.E.2d 1049, 1051 (1995). Furthermore, petitioner indeed testified that, if he had received any notices, he could not have read or understood them, which the court found unbelievable. Therefore, we find no error.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

QUINN, P.J., and GREIMAN, J., concur.