No. 3--06--0031

_____

Filed October 6, 2006.

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| CHRIS MALMLOFF, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Petitioner-Appellant, | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | |
| | ) | No. 04-L-129 |
| THE COUNTY TREASURER, | ) | |
| LOUISE KERR, AS TRUSTEE OF | ) | |
| THE INDEMNITY FUND, | ) | Honorable |
| | ) | Joseph F. Beatty, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the opinion of the court:
_____

Petitioner, Chris Malmloff, brought suit against defendant, Rock Island County Treasurer Louise Kerr, seeking to recover from the county's tax deed indemnity fund just compensation for the tax sale of petitioner's home. The trial court granted the defendant's motion for summary judgment essentially finding that the petitioner was not equitably entitled to recover from the tax deed indemnity fund. The petitioner appeals that decision. We affirm.

FACTS

The facts as determined from the pleadings and other documents filed by the parties in the trial court are as follows. The petitioner owned real property in Moline, Illinois, and

lived on that property in a single family residence (collectively referred to as the subject property). The subject property had previously been owned by the petitioner's grandfather. The petitioner bought the subject property in 1994 from his mother for $20,000 cash.

In addition to the subject property, the petitioner had an ownership interest in three rental properties through a partnership he was involved in with Jeff Mahieu. Mahieu did most of the paperwork for the partnership. The petitioner collected the rents and did all of the labor.

In March of 1995, the petitioner took out a loan of $74,000, which was secured by the subject property. The loan was primarily for the partnership and was paid off in full by January of 1999. A second loan secured by the subject property was taken out in January 1999 by the petitioner and was paid off in June of 1999. That loan was for $6,000. As of June of 1999, there has been no mortgage or other lien against the property, except for unpaid taxes.

When petitioner bought the subject property in 1994, he knew and understood that he was the one that had to pay the taxes on the property. Despite that knowledge, petitioner himself never paid the taxes and felt that it was not a high priority. The property taxes for 1994 were paid when they became due in 1995, but not by the petitioner. The petitioner did not remember who paid those taxes. The property taxes for 1995 were not paid in 1996 when they became due, but rather were sold at a tax sale. The taxes were later redeemed by Mahieu in 1998 after he learned that the taxes had not been paid by the petitioner. The property taxes for 1996 were not paid in 1997 when they became due. Those taxes were also redeemed by Mahieu in 1998. The property taxes for 1997 were not paid in 1998 when they became due and were sold at a tax sale in 1999, but were later

2

redeemed. The property taxes for 1998 were not paid in 1999 when they became due and were sold to a tax buyer. Those taxes were never redeemed and were the cause of the petitioner eventually losing the subject property. The property taxes for 1999 were paid in 2000 when they became due but not by the petitioner. Those taxes were paid by the petitioner's mother.

The petitioner has no mental or physical disabilities. The petitioner graduated from high school and attended a two-year training program on electronics (computer maintenance) at Blackhawk College. He finished that program one credit short of getting an associates degree. The petitioner also attended a one-year training program on auto body repair at Scott College. The petitioner has been a union electrician for 15 years and has done commercial, industrial, and residential electrical work.

As a union electrician, the petitioner makes $18 or $19 an hour. Other than his property taxes, he pays his bills every year, including his state and federal income taxes. In addition, the petitioner previously received a settlement of $50,000. He used $20,000 of the settlement to purchase the subject property from his mother. The remaining $30,000 he used to buy a boat and other items for himself. The petitioner acknowledged in his deposition that he was financially able to pay his taxes but made no real effort to pay them.

In January of 2000, the subject property was sold at a tax sale because of the petitioner's failure to pay the property taxes due in 1999 (accrued in 1998). The property was purchased by Dennis Ballinger.

In August of 2002, as the end of the redemption period for the property was approaching, Ballinger instituted court proceedings to obtain a tax deed for the property. In his court filings, Ballinger attested that he had complied with all of the statutory notice

3

requirements and that he had caused the sheriff to personally serve notice of the proceedings on the owner of the subject property. In January of 2003, the trial court granted Ballinger's request. The trial court ordered that a tax deed be issued and that Ballinger be allowed to take possession of the property.

In May of 2003, the petitioner filed a motion for relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2004)) requesting that the order directing the issuance of the tax deed be vacated because Ballinger had obtained the tax deed by fraud. Specifically, the petitioner alleged that Ballinger knew that the sheriff had not obtained personal service upon the petitioner but represented to the court that such service had been obtained. The record showed that the sheriff had attempted personal service on the petitioner two times but was unsuccessful. The return indicated that service was not made because no one answered the door at the subject property. The record also showed that notice was sent by certified mail to the petitioner on two occasions, but those letters were returned unclaimed. The trial court, finding that the petitioner had failed to show by clear and convincing evidence that Ballinger had acted fraudulently, granted a directed verdict in favor of Ballinger. We affirmed that ruling on direct appeal. Ballinger v. Malmloff, No. 3-03-0856 (2004) (unpublished order under Supreme Court Rule 23). The petitioner filed a request for leave to appeal to the supreme court, however, that request was denied.

In November of 2004, the petitioner brought suit pursuant to section 21-305 of the Property Tax Code (35 ILCS 200/21-305 (West 2004)) seeking to recover approximately $55,000 from the county's tax deed indemnity fund (the fund) as just compensation for the

4

sale of his home.[1]  The petitioner alleged that he did not receive notice of the tax deed proceeding until after the tax deed had become incontestable. The petitioner asserted that because his home was taken in a tax sale without proper notice, he was equitably entitled to compensation from the fund.

On the issue of notice, the petitioner testified in his deposition that he only checked his mail every two or three weeks and that when he retrieved the certified mail receipts from the mail box, the time period for him to pick up the mail at the post office had already expired.  The petitioner also stated that he never checked further with the post office regarding the status of the certified letters.  When asked about personal service, the petitioner speculated that he was at work when the sheriff tried to serve notice on him at the subject property.

After reviewing all of the court filings and hearing the arguments of the parties, the trial court granted the defendant's motion for summary judgment.[2]  In doing so, the trial court essentially found that the petitioner was not equitably entitled to compensation from the fund.  This appeal followed.

## ANALYSIS

[1]In the petitioner's motion for summary judgment, the amount sought was reduced to approximately $47,000.

[2]Both sides moved for summary judgment.  The trial court granted defendant's motion and denied petitioner's motion.

The petitioner argues that the trial court erred in finding that the petitioner was not equitably entitled to recover from the tax deed indemnity fund and in granting summary judgment for defendant on that basis. We review de novo the trial court's order granting summary judgment.[3] <u>Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.</u>, 216 Ill. 2d 294, 305, 837 N.E. 2d 99, 106 (2005). In conducting that review, we must construe all of the pleading and other filings in the light most favorable to the non-moving party. <u>Northern Illinois Emergency Physicians</u>, 216 Ill. 2d at 305, 837 N.E. 2d at 106. Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Northern Illinois Emergency Physicians</u>, 216 Ill. 2d at 305, 837 N.E. 2d at 106.

The purpose of the tax deed indemnity fund is to alleviate the harsh consequences of a tax foreclosure in certain situations. <u>Hedrick v. Bathon</u>, 319 Ill. App. 3d 599, 604, 747 N.E. 2d 917, 922 (2001). Recovery from the fund is controlled by section 21-305 of the Property Tax Code (35 ILCS 200/21-305 (West 2004)), which provides in pertinent part as

---

[3]In many of the published indemnity fund cases, the trial court's ruling was made after a full evidentiary hearing on the issue. Thus, on appeal, the trial court's ruling in those cases was subject to an abuse of discretion standard of review. <u>See</u>, <u>e.g.</u>, <u>Hedrick v. Bathon</u>, 319 Ill. App. 3d 599, 606, 747 N.E. 2d 917, 923-924 (2001). Our ruling here is de novo because the trial court's ruling was made on a motion for summary judgment.

follows:

"§ 21-305. Payments from Indemnity Fund.(a)  Any owner of property sold under any provision of this Code who sustains loss or damage by reason of the issuance of a tax deed under Section 21-445 or 22-40 and who is barred or is in any way precluded from bringing an action for the recovery of the property shall have the right to indemnity for the loss or damage sustained, limited as follows:  (1)        An owner who resided on property that contained 4 or less dwelling units on the last day of the period of redemption and who is equitably entitled to compensation for the loss or damage sustained has the right to indemnity. An equitable indemnity award shall be limited to the fair cash value of the property as of the date the tax deed was issued less any mortgages or liens on the property, and the award will not exceed $99,000. The Court shall liberally construe this equitable entitlement standard to provide compensation wherever, in the discretion of the Court, the equities warrant the action.

An owner of a property that contained 4 or less dwelling units who requests an award in excess of $99,000 must prove that the loss of his or her property was not attributable to his or her own fault or negligence before an award in excess of $99,000 will be granted.

7

(2) An owner who sustains the loss or damage of any property occasioned by reason of the issuance of a tax deed, without fault or negligence of his or her own, has the right to indemnity limited to the fair cash value of the property less any mortgages or liens on the property. In determining the existence of fault or negligence, the court shall consider whether the owner exercised ordinary reasonable diligence under all of the relevant circumstances. 35 ILCS 200/21-305 (West 2004)."

As the statute indicates, a petitioner seeking an award of more than $99,000 under subsection (a)(1) or seeking an award of any amount under subsection (a)(2) must show that he was without fault or negligence in order to obtain indemnity from the fund. 35 ILCS 200/ 21-305 (West 2004). There is no such requirement for a petitioner seeking an award of $99,000 or less under subsection (a)(1). 35 ILCS 200/ 21-305 (West 2004). As indicated by the statute, the court shall liberally construe the equitable entitlement standard to provide compensation wherever, in the discretion of the court, the equities warrant the action. 35 ILCS 200/21-305(a)(1) (West 2004). Assuming that the statutory qualifications are satisfied, subsection (a)(1) permits a trial court to compensate a real estate owner whose property was sold at a tax sale, even though the tax sale may have taken place as a result of the real estate owner's fault or negligence, if the court concludes that the real estate owner is nevertheless equitably entitled to compensation. 35 ILCS 200/21-305(a)(1) (West 2004); Hedrick v. Bathon, 319 Ill. App. 3d 599, 605, 747 N.E. 2d 917, 923 (2001). In

8

determining equitable entitlement, the courts have applied a totality of the circumstances test and have considered such factors as the petitioners mental, physical, and financial status; the petitioner's sophistication and comprehension of responsibilities; the petitioner's diligence towards his responsibilities; the credibility of the petitioner; and the condition and income of the indemnity fund. In re Application of County Collector of Lake County, 343 Ill. App. 3d 363, 369, 797 N.E. 2d 1122, 1127 (2003); Prince v. Rosewell, 319 Ill. App. 3d 1082, 1086, 745 N.E. 2d 748, 752 (2001) (as in any proceeding before a trier of fact, the credibility of the petitioner is also at issue); Hedrick, 319 Ill. App. 3d at 608, 747 N.E. 2d at 925 (condition and income of indemnity fund are relevant factors in equitable entitlement but are not determinative).  While indemnity is based upon equitable factors, it has also been said that the indemnity fund is not a charitable giveaway.  Prince, 319 Ill. App. 3d at 1088, 745 N.E. 2d at 753.  Before we look at the particular facts of the present case, we must note that we disagree with, and have chosen not to follow, the approach used by the First District Appellate Court.  In the first district, the appellate court has interpreted the statute (or the previous version of it with similar language) as requiring that the equitable determination be made without regard to fault or negligence on behalf of the petitioner. See Kirk v. Rosewell, 225 Ill. App. 3d 326, 330, 587 N.E. 2d 1214, 1217 (1992) (the question of whether petitioner is equitably entitled to indemnity is to be determined without regard to fault); Prince, 319 Ill. App. 3d at 1086, 745 N.E. 2d at 752 (in determining the rights of a petitioner under the equitable entitlement standard, the court must examine all of the relevant factors and the totality of the circumstances without regard to fault).  This interpretation has left trial judges to perform a judicial analysis referring to the  appellate court's admonition to make an equitable determination without regard to fault or negligence

9

while trying to apply, as equity requires, a totality of circumstances test considering a number of factors including a party's conduct as it relates to diligence and due care.

We are not bound by that interpretation. See In re May 1991 Will County Grand Jury, 152 Ill. 2d 381, 398, 604 N.E.2d 929, 938 (1992) (one district of the appellate court is not bound to follow the decisions of other districts; such decisions have only persuasive value). The statutory section regarding equitable entitlement does not exclude the consideration of all factors in equity including the conduct of the petitioner. The conduct of the petitioner can encompass a lack of diligence as well as fault or negligence. This approach gives effect to the actual words of the statute and its plain meaning. See Hedrick, 319 Ill. App. 3d at 604-605, 747 N.E. 2d at 922 (statutory interpretation is the process by which the intent of the legislature is ascertained and given effect, primarily by looking to the statute's actual words, which are to be given their commonly accepted meanings). There is nothing in the language of subsection (a)(1) of the statute itself that prohibits the trial court from considering fault or negligence in weighing the equities under the equitable entitlement standard. The statute merely dictates that fault or negligence is not a bar to recovery when the owner lived on the property on the last day of the redemption period and seeks an award of less than $99,000. See 35 ILCS 200/21-305(a)(1) (West 2004); Hedrick, 319 Ill. App. 3d at 605, 747 N.E. 2d at 923. The court must consider the totality of the circumstances and determine whether the real estate owner is equitably entitled to the relief sought. See Hedrick, 319 Ill. App. 3d at 605, 747 N.E. 2d at 923. The real question is whether there are equitable factors, which in the broad discretion of the trial court, would make the loss of the property without compensation an intolerable loss. Equity, after all, denotes fairness, justice, and right dealing. Hedrick, 319 Ill. App. 3d

10

at 608, 747 N.E. 2d at 925.

We also note that the approach we advocate here is not inconsistent with the result reached by other appellate courts in prior cases, even those from the first district. In all of the following cases, the trial courts' rulings were affirmed applying an abuse of discretion standard of review and considering the broad discretion of the trial court on this issue: In re Application of Cook County Collector, 174 Ill. App. 3d 981, 987, 529 N.E. 2d 570, 574 (1988) (denial of indemnity affirmed where petitioner was well educated, understood the consequences of not paying her taxes, and was familiar with the redemption process), In re Application of Kane County Collector, 135 Ill. App. 3d 796, 807-810, 482 N.E. 2d 161, 168-170 (1985) (denial of indemnity affirmed where petitioner was well educated; worked steadily as a nurse; had no mental, physical, or financial inability to pay her taxes; was not the victim of fraud or deception; failed to obtain counseling for her depression or legal advice regarding her tax problems; and ignored notices regarding the consequences of not paying her taxes), Prince, 319 Ill. App. 3d at 1084-1088, 745 N.E. 2d at 750-754 (denial of indemnity affirmed although petitioner was 72 years old and suffered from many physical disabilities where petitioner had sufficient "street smarts" to understand his responsibilities but lacked diligence towards those responsibilities and where trial court found that petitioner's testimony was not credible), Kirk, 225 Ill. App. 3d at 327-331, 587 N.E. 2d at 1214-1217 (indemnity award affirmed although petitioner was well educated where petitioner had quit her job to take care of her ailing grandparents, was disabled, had limited income, and had an outstanding loan and funeral expenses), and Hedrick, 319 Ill. App. 3d at 606-609, 747 N.E. 2d at 923-925 (indemnity award affirmed where petitioner had difficulty managing her own affairs because of a mental illness, was in serious financial

11

distress, and could have used her home as collateral to for a loan to pay the taxes if she was thinking clearly).

Having set forth the applicable legal principles, we now turn to the facts of the present case. Considering the totality of the circumstances, we find that the petitioner is not equitably entitled to compensation from the fund.  First, the petitioner has no mental or physical disability that prevented him from paying the taxes.  The petitioner is of average to above average intelligence.  He graduated from high school, attended college-level training programs, and worked as an electrician.  The petitioner had sufficient intelligence to attend to all of his other financial obligations.  He simply was not diligent in paying the taxes. Second, the petitioner was financially able to pay or redeem the taxes.  The petitioner made approximately $18 an hour as an electrician, was a member of a partnership which owned rental properties, and had $30,000 left over from a settlement that he had received.  The petitioner had taken out (and had paid off) loans on the subject property in the past, was familiar with the procedure for doing so, and acknowledged that he could have taken out a loan to pay or redeem the taxes.  And third, the petitioner was familiar with the tax process.  Despite the problems with notice in the present case, the petitioner acknowledged that he had received the tax bills each year, that he did not pay the taxes, and that there were other notices that he did not pick up from the post office or inquire into further.  The petitioner was  familiar with the process for redeeming delinquent taxes and had delinquent taxes redeemed on his behalf in the past.  Based on the record before us, we must conclude that the equities weigh against the petitioner and that the petitioner is not entitled to relief.

We are not persuaded that the alleged lack of proper notice, in and of itself, justifies

12

a different result. The petitioner chose a pattern of behavior and conduct which made notice difficult or impossible to effectuate. The petitioner checked his mail only every two to three weeks and made no effort to claim or follow up on certified mail notices that he had received. Petitioner's own conduct indicated a lack of due care and diligence. We find, therefore, that the trial court properly granted summary judgment in favor of the defendant.

We are mindful that under the statute, a petitioner may not obtain indemnity from the fund unless he is barred or otherwise precluded from bringing an action for the recovery of the property. 35 ILCS 200/21-305(a) (West 2004). The defendant before us makes that very argument. Because we find that under the totality of the circumstances, the petitioner is not equitably entitled to indemnity from the fund, we need not address whether the petitioner has an alternative legal remedy available for the recovery of the property or whether the recent United States Supreme Court case of Jones v. Flowers, ___ U.S. ___, 164 L. Ed. 2d 415, 126 S. Ct. 1708 (2006), has an impact on the availability of an alternative legal remedy for the petitioner.

For the foregoing reasons, we affirm the order of the Circuit Court of Rock Island County granting the defendant's motion for summary judgment.

Affirmed.

SCHMIDT, P. J. and LYTTON, J. concurring.