Docket No. 103719.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

CHRIS MALMLOFF, Appellant, v. LOUISE KERR, Rock Island County Treasurer, as Trustee of the Rock Island County Property Tax Deed Indemnity Fund, Appellee.

*Opinion filed October 4, 2007.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Chris Malmloff lost his home because he failed to pay his property taxes. He then filed a petition under section 21–305 of the Property Tax Code (35 ILCS 200/21–305 (West 2004)) against the Rock Island County treasurer, seeking an award from the county's tax deed indemnity fund. The trial court granted the county treasurer's motion for summary judgment, finding that Malmloff was not equitably entitled to recover from the fund. The appellate court affirmed. 367 Ill. App. 3d 760. For the reasons that follow, we also affirm.

BACKGROUND

In 1994, Malmloff purchased a single-family residence in Moline from his mother for $20,000 cash after she had inherited it from his grandfather. Between 1994 and 2000, Malmloff never personally paid taxes on this property. The 1994 property taxes were paid, but not by Malmloff. The 1995 property taxes were not paid, and the property was sold at a tax sale. The property was then redeemed by Jeff Mahieu, Malmloff's partner in a rental properties business. The 1996 property taxes were not paid when they were due, but were paid later by Mahieu. The 1997 property taxes were not paid, and the property again was sold at a tax sale. The property was later redeemed. The 1998 property taxes were not paid, and the property was sold for a third time at a tax sale, to Dennis Ballinger. The property was not redeemed.

In August 2002, Ballinger filed a petition to obtain a tax deed for the property. After the redemption period expired, Ballinger requested an order directing the Rock Island County clerk to issue a tax deed. In an affidavit Ballinger attested that he "caused the Sheriff of said county to serve written notice upon [Malmloff] by handing the same to and leaving the same with him *** personally." Ballinger further attested that he published notice in the Rock Island newspaper and sent notice twice to Malmloff by "certified mail, return receipt requested." Ballinger's statements were partially untrue. Notice was sent by certified mail to Malmloff on two occasions, but those letters were returned as unclaimed. On September 23, 2002, a Rock Island County deputy sheriff attempted personal service, but could not locate Malmloff, and the deputy sheriff checked a box on a form, stating, "No one will answer door, been there 2 times." In January 2003, the trial court granted Ballinger's request, finding that he had complied with all statutory and constitutional requirements, and ordered the Rock Island County clerk to issue a tax deed to Ballinger.

On May 6, 2003, Malmloff filed a petition under section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2004)), asking the court to vacate its tax deed order. Malmloff charged that Ballinger's statement in his petition regarding personal service was fraudulent. The trial court observed that there were two equally plausible inferences to be drawn from Ballinger's statement: it was made fraudulently, or it was made "sloppily, very sloppily or

-2-

negligently." The trial court concluded that Malmloff failed to show by clear and convincing evidence that Ballinger had acted fraudulently and directed a verdict in Ballinger's favor. The appellate court affirmed. Like the trial court, the appellate court concluded that Malmloff failed to present clear and convincing evidence that Ballinger had procured the tax deed through fraud: "Although Ballinger was obviously negligent in attesting to personal service when none was had, his other actions belie an attempt to engage in a pattern of deception." No. 3–03–0856 (unpublished order under Supreme Court Rule 23). This court denied Malmloff's petition for leave to appeal. See *In re Application of the County Collector*, 211 Ill. 2d 577 (2004) (table).

In November 2004, Malmloff filed a petition under section 21–305 of the Property Tax Code (35 ILCS 200/21–305 (West 2004)), seeking approximately $54,895.52 from the Rock Island County tax deed indemnity fund.[1] Malmloff claimed that he never received notice of the tax sale, nor of Ballinger's petition for a tax deed. According to Malmloff, if he had notice "that someone was petitioning for a tax deed to his home," he "would have been willing and able to redeem said taxes and would have done so." Because his home was taken without proper notice, argued Malmloff, he was equitably entitled to compensation from the fund.

In his discovery deposition, Malmloff testified that he was a high school graduate with "at least average to above average" intelligence. He was one credit hour short of an associate's degree in electronics from Blackhawk College, and he had completed a one-year course in auto body tech from Scott Community College. He was a commercial and residential electrician by trade, as well as a 15-year member of the electrician's union, and he earned $18 to $19 per hour. He had also been a partner in a rental property business with Mahieu: Malmloff collected the rent and performed the labor; Mahieu handled the paperwork.

In the mid-1990s, Malmloff received an approximately $50,000 workers' compensation settlement from an employer. He used $20,000 to buy the property from his mother and the remaining

---

[1]Malmloff later reduced this amount to approximately $46,000.

$30,000 to buy, among other things, a boat. Malmloff understood that he would have to pay taxes on the property when he purchased it from his mother. According to Malmloff, Mahieu paid the taxes for 1996 and 1997 in return for Malmloff's interest in their business: "When Jeff bought me out, he took that money and paid the[ ] taxes for me." Malmloff acknowledged that he "might have" received tax bills from the county, but did not check his mail very frequently–only "every two, three weeks." He stated that he had found certified mail notification forms in his mailbox after the date on the forms indicating the mail would be returned to its sender. Though this concerned him, Malmloff "didn't look into it that far."

Malmloff was not very diligent in seeing that his property taxes were paid; they remained a low priority for him. "I didn't think it needed to be done right now," he testified, adding, "I had money, but I just didn't pay them." Though he stated that he paid his other bills, and filed timely federal and state income tax returns, he agreed that he failed to make any real effort to pay his property taxes.

The parties filed cross-motions for summary judgment. The trial court granted summary judgment to the county treasurer, finding that Malmloff was not equitably entitled to compensation. He appealed, and the appellate court affirmed. 367 Ill. App. 3d 760. The court noted that Malmloff was physically, mentally, and financially able to pay his property taxes. 367 Ill. App. 3d at 767. He was familiar with the tax process, and even the process for redeeming property sold for delinquent taxes. 367 Ill. App. 3d at 767-68. The court further held that the alleged lack of proper notice did not justify a different result: "[Malmloff] chose a pattern of behavior and conduct which made notice difficult or impossible to effectuate. [Malmloff's] own conduct indicated a lack of due care and diligence." 367 Ill. App. 3d at 768.

We allowed Malmloff's petition for leave to appeal. 210 Ill. 2d R. 315(a).


ANALYSIS

The sole issue presented in this case is whether Malmloff was equitably entitled to indemnity under section 21–305(a)(1). This court reviews *de novo* an order granting summary judgment. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). We turn to the statute.

In order to alleviate the harsh consequences that follow tax sale proceedings, the legislature created the tax deed indemnity fund. See *Hedrick v. Bathon*, 319 Ill. App. 3d 599, 604 (2001). Section 21–305 governs payments from this fund and provides in part:

"(a) Any owner of property sold under any provision of this Code who sustains loss or damage by reason of the issuance of a tax deed under Section 21–445 or 22–40 and who is barred or is in any way precluded from bringing an action for the recovery of the property shall have the right to indemnity for the loss or damage sustained, limited as follows:

(1) An owner who resided on property that contained 4 or less dwelling units on the last day of the period of redemption and who is equitably entitled to compensation for the loss or damage sustained has the right to indemnity. An equitable indemnity award shall be limited to the fair cash value of the property as of the date the tax deed was issued less any mortgages or liens on the property, and the award will not exceed $99,000. The Court shall liberally construe this equitable entitlement standard to provide compensation wherever, in the discretion of the Court, the equities warrant the action.

An owner of a property that contained 4 or less dwelling units who requests an award in excess of $99,000 must prove that the loss of his or her property was not attributable to his or her own fault or negligence before an award in excess of $99,000 will be granted." 35 ILCS 200/21–305 (West 2004).

Under section 21–305(a)(1), a person like Malmloff seeking less than $99,000 must show that he resided on the property on the last day of the redemption period, that the property contained less than five dwelling units, and that he is equitably entitled to indemnity. A person seeking more than $99,000 must show that the loss of the property was not attributable to his own fault or negligence. Malmloff argues in his petition for leave to appeal that the appellate court erred because it based its decision on his fault or negligence.[2] According to

---

[2]Malmloff departs from this issue in his appellant's brief, arguing instead that it was inequitable to take his home without notice.

Malmloff, he was not required to prove that he lost his property through no fault or negligence of his own; he was only required to prove that he is equitably entitled to indemnity.

The appellate court noted a purported split in the appellate districts on this issue. 367 Ill. App. 3d at 765-66. According to the appellate court, the First District has held that the trial court must decide the equitable entitlement issue "without regard to fault" (see *Prince v. Rosewell*, 319 Ill. App. 3d 1082, 1086 (2001); *Kirk v. Rosewell*, 225 Ill. App. 3d 326, 330 (1992)), while other appellate court districts have held that the trial court may consider the conduct of the person seeking indemnity (see *Hedrick*, 319 Ill. App. 3d at 604). But as the appellate court correctly observed, these approaches have not led to inconsistent results. 367 Ill. App. 3d at 766-67. Indeed, the difference in these lines of cases is largely semantic. The First District understands that a person's conduct may be considered (see, *e.g.*, *Prince*, 319 Ill. App. 3d at 1086-87), while other districts understand that a person's "fault or negligence would not *per se* be a bar *** to indemnity" (see *In re Application of Kane County Treasurer*, 135 Ill. App. 3d 796, 806 (1985)). That is, a person who lost property after a tax sale has a right to indemnification " 'even though the tax sale took place as a result of the [person's] fault or negligence, *if* the court concludes that the real estate owner is nevertheless *equitably entitled* to just compensation.' " (Emphases in original.) *Hedrick*, 319 Ill. App. 3d at 605, quoting *In re Application of Cook County Collector*, 174 Ill. App. 3d 981, 984 (1988).

In short, when a person seeks less than $99,000, the trial court's focus under section 21–305(a)(1) rests on equity alone. The appellate court in *In re Application of Kane County Treasurer* referred to the Black's Law Dictionary definition of equity: " 'In its broadest and most general signification, [equity] denotes the spirit and the habit of fairness, justness, and right dealing which would regulate the intercourse of men with men,–the rule of doing to all others as we desire them to do to us; or, as it is expressed by Justinian, "to live honestly, to harm nobody, to render to every man his due." ' " *Kane County Treasurer*, 135 Ill. App. 3d at 806-07, quoting Black's Law Dictionary 634 (4th ed. 1951); accord *Hedrick*, 319 Ill. App. 3d at 608; see also Black's Law Dictionary 579 (8th ed. 2004) (defining "equity" as "[f]airness; impartiality"); *Holman v. Gill*, 107 Ill. 467, 477 (1883) (noting equity "looks mainly to the real justice and merits

of a cause"). Indeed, such a broad concept of fairness can be applied in a given case only if a broad range of circumstances are considered. In the context of section 21–305(a)(1), those circumstances include the mental, physical, and financial status of the person seeking indemnity; the person's comprehension of property taxes and the duty to pay them; the person's diligence and credibility; and the size of the county's fund. See *In re Application of the County Collector*, 343 Ill. App. 3d 363, 369 (2003); *Hedrick*, 319 Ill. App. 3d at 608. We emphasize that each case must be decided on its own facts. *Garcia v. Rosewell*, 43 Ill. App. 3d 512, 517 (1976). To the extent that *Prince* and *Kirk* can be read to state that fault or negligence are impermissible considerations in the equitable balance, they are inconsistent with the language of section 21–305(a)(1) and are overruled.

Here, Malmloff had no physical, mental, or financial problems that prevented him from paying his property taxes. He worked as an electrician, and performed labor in his partnership with Mathieu. In his own estimation, he has average to above-average intelligence. He graduated from high school, attended some college-level training programs, and remains one credit hour short of a college degree. Malmloff was capable of remembering his other financial obligations, notably filing timely federal and state income tax returns, and he was financially able to pay his property taxes. He earned approximately $18 per hour as an electrician. After purchasing the property from his mother, Malmloff had approximately $30,000 left from his workers' compensation settlement. Further, he agreed that he could have taken out a loan to pay his taxes.

Malmloff understood that he had to pay property taxes when he bought the property from his mother. He even entered into an agreement under which Mahieu would pay two years of property taxes in exchange for Malmloff's interest in their partnership. He stated that he had received property tax bills from the county, and he knew the consequences if he failed to pay his property taxes because his property had been sold at tax sales–and redeemed–twice before Ballinger bought it.

Malmloff simply was not diligent in paying his taxes. Though he contends that it is inequitable to take his home because he did not receive notice of Ballinger's tax deed petition, he essentially attempts to raise, under the guise of equitable entitlement, an issue decided against him in an earlier case. But the doctrine of collateral estoppel

bars relitigation of an issue previously decided. See *People v. Tenner*, 206 Ill. 2d 381, 396 (2002). More importantly, instead of whether equity prevents taking Malmloff's home without notice, the issue is whether equity requires paying Malmloff from the indemnity fund. Notice, or its lack, of a petition for a tax deed is surely relevant in gauging a person's diligence–and, thus, in deciding the ultimate issue of equitable entitlement–but it is not determinative. The appellate court was correct in observing that Malmloff "chose a pattern of behavior and conduct which made notice difficult or impossible to effectuate." 367 Ill. App. 3d at 768. Further, Malmloff failed to retrieve certified mail from the post office and, despite some concerns when it was returned to its sender, cavalierly declined to inquire further. As a whole, Malmloff's conduct "at the least could be described as insidiously naive and, at the most, fiscally irresponsible." *Kane County Collector*, 135 Ill. App. 3d at 810.

Finally, in response to a request to admit, the Rock Island County treasurer stated that "since the creation of the Indemnity Fund, the Rock Island County Treasurer has collected in excess of $600,000.00 under authority of the Indemnity Fund Act. However, the fund currently has a balance of only $9,500.00." That is, the fund's balance is less than the amount Malmloff seeks.

The legislature left the balancing of the equities to the trial court's discretion (see 35 ILCS 200/21–305(a)(1) (West 2004)), and we cannot say the trial court abused that discretion in deciding that Malmloff is not equitably entitled to compensation from the fund.

## CONCLUSION

For the reasons that we have stated, the judgment of the appellate court is affirmed.

*Affirmed.*